137 So.2d 894 (1962)
242 La. 626
Donald F. GLIDDEN
v.
ALEXANDRIA CONCRETE COMPANY, Inc., et al.
No. 45853.
Supreme Court of Louisiana.
February 19, 1962.
Stafford & Pitts, Alexandria, for applicants.
Lloyd G. Teekell, John M. Sherrill, III, Alexandria, for respondent.
McCALEB, Justice.
This is an action to recover workmen's compensation for total and permanent disability and for penalties and attorney's fees. The claimed disability has allegedly resulted from a cement dermatitis contracted by plaintiff while he was operating a cement truck in the course and scope of his employment. The facts of the case are not disputed and the only issue is: Does the plaintiff's skin condition render him disabled "* * * to do work of any reasonable character * * *" within the meaning and intendment of the Compensation law.
Plaintiff, who was 25 years old at the time of trial, had a work history prior to his employment with the defendant, Alexandria Concrete Company, Inc., of driving a moving van, operating a drill press in a factory, and being a truck driver while in military service. When his skin condition arose, plaintiff had been in the company's employ for approximately six months and was earning an average of $55.00 per week. His duties consisted of driving the cement truck, operating the cement mixer thereon, and *895 loading and unloading both wet and dry cement. This job required training to the extent that, when the plaintiff first went to work for the company, he accompanied another driver for four days before being assigned to a truck on his own
The work made it necessary that plaintiff's bare skin be in contact with cement. On November 26, 1957, plaintiff discovered a rash on his face and neck. When the condition grew worse over the next few days, plaintiff consulted his family physician who placed him under the care of Dr. W. H. Hamilton, a dermatologist. Dr. Hamilton diagnosed the condition as "acute cement dermatitis". Plaintiff was hospitalized for seven days and, since that time, he has remained under the care of Dr. Hamilton, receiving numerous and varied treatments for bodily rashes resulting from "flare-ups" of the dermatitis. Dr. Hamilton found that this was not the usual type of cement dermatitis but was a chromatic reaction to the minute amounts of chromates that are contained in cement. He stated that, in cases of chromate reaction the prognosis is necessarily indefinite and the condition may go on for a long time. With respect to the nature of the condition, Dr. Hamilton testified:
"Chromate is a very peculiar thing in that it apparently develops a change in the skin after a chromate sensitivity. The skin gets dry and they get to where they are very sensitive to heat, heat from bodily exertion or heat from weather. And any tendency to perspire after they have a chromate sensitivity breaks them out in what we call a chromate eczema which is a rash that is usually on the areas that have been most greatly exposed to the chromate * * *".
Two other dermatologists, a Dr. Jolly and a Dr. Henington, supported Dr. Hamilton's diagnosis and his statement of the nature and duration of chromate sensitivity. Dr. Henington's views were obtained by the taking of his deposition and Dr. Jolly's through a written medical report which was included in the record by stipulation of the parties. The only thing added by these two dermatologists to Dr. Hamilton's testimony at the trial was Dr. Henington's emphatic opinion that there was no reason that the plaintiff could not work as a truck driver so long as he did not come in contact with cement or other substances containing chromates. Also, on cross-examination, Dr. Hamilton conceded that the plaintiff could drive trucks carrying a number of different products but that, if he got hot and perspired, he would itch and be uncomfortable.
Compensation was paid by the defendant insurance carrier from the time plaintiff had to leave his job until he found another position some months later. At that time, plaintiff went to work for an insurance company as a collector and compensation payments were stopped. Plaintiff is still employed in his insurance job and is making considerably more money than he made as a truck driver.
Plaintiff bases his claim for disability on two theories. First, it is contended that the operation of the cement-mixer truck is a skilled occupation and that, since he cannot go back to working around cement and ever expect to recover from his skin condition, he is prevented from practicing his trade. Alternatively, counsel asserts that, if the cement truck operation is not regarded as a particular skill, plaintiff is nevertheless totally disabled because he cannot do any manual labor without becoming overheated, which irritates his skin condition with the consequent suffering therefrom and that the law will not require a man to go back to work if he can only do so by suffering pain and discomfort.
The trial judge concluded that the operation of the concrete-mixer truck itself was not a specialized type of employment; that the plaintiff's skill was only that of a truck driver, and that, by the time payments were stopped, plaintiff was able to work as a truck driver. He recognized the fact that *896 plaintiff would experience discomfort from his ailment while driving a truck, but held that such discomfort was not, per se, disability. Plaintiff's demands for further weekly compensation were rejected, but plaintiff did receive a judgment for an unpaid medical bill of $523.65, plus 12% penalty and attorney's fee of $200.
On appeal, the Court of Appeal, Third Circuit, reversed the judgment in both aspects. That court, while apparently agreeing that operating a cement truck was not a specialized trade or skill, held that the fact that plaintiff would perspire and itch and would be more or less continually in discomfort, if he attempted to engage in his customary occupation of truck driver and performed the manual labor usually attendant therewith, rendered him totally permanently disabled within the intendment of our statute (R.S. 23:1221) as no one is required to work in pain or discomfort. Also, the court found that the trial judge had erred in awarding penalties and attorney's fees because there was nothing in the record to indicate that demand had been made upon the defendant insurance company for payment of the medical bill. A remand was ordered for determination of whether or not demand had been made and penalties were due. See 132 So.2d 514. On defendant's application, we granted certiorari.
The initial point for decision here, as was the case in Olivier v. Liberty Mutual Insurance Company, 241 La. 745, 131 So.2d 50, is whether the operation of a cementmixer truck is a special skill or trade of such a nature that the loss of the ability to perform it constitutes total and permanent disability under the doctrine enunciated in Ranatza v. Higgins Industries, Inc., 208 La. 198,23 So.2d 45 and kindred cases. This must be answered in the negative. The operation of a cement-mixer truck, which was learned in four days or less in this instance, cannot be regarded as a skill or trade that becomes the life pursuit of a worker, such as a carpenter, bricklayer or plasterer. On the other hand, plaintiff should not be considered as merely a common laborer whereby the criterion of disability, as suggested in some of the authorities and by Malone, Louisiana Compensation Law and Practice, Section 275, p. 334, would be whether or not the worker's competitive position in the market for common labor has been substantially affected as a consequence of the accident or disease. Plaintiff did possess a calling; certainly a semi-skill if not a skill, that of a truck driver (Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695) and, although he is no longer able to be a truck driver for a cement company, the large area in which the services of truck drivers are essential is otherwise open to him. Indeed, the situation, here, parallels in principle that presented in Saltzman v. Lone Star Cement Co., La.App., 55 So.2d 674, where a welder, who was injured in a cement plant and could no longer work around cement, was held not to be totally and permanently disabled because he could practice his trade of welding in any number of other places where he would not have to come in contact with cement.
The question, then, is whether plaintiff's skin condition constitutes total disability with regard to the driving of trucks generally? There is no doubt but that plaintiff is physically able to drive trucks. However, the evidence indicates that, if plaintiff does engage in this work and the physical exertion connected with the usual duties of a truck driver, he would become overheated, perspire and, as the result of his skin condition, be quite uncomfortable from itching. So it is said that plaintiff is disabled as a consequence of the discomfort he must bear, should he resume the occupation of truck driver, for the law will not deprive an injured person of compensation when, although he is physically able to perform his tasks, to do so means he must suffer substantial pain and discomfort.[1]
*897 It would be illogical, however, to treat this doctrine as encompassing all degrees of discomfort and make a complete or "good-as-new" recovery essential before an employer may stop compensation payments. The pain must be substantial enough to be disabling in that it either prevents the worker from carrying out some of the functions of his job[2] or, where the pain is not so intense as to hinder the worker's fulfillment of his duties, it must be shown that performance of the work would be deleterious to his health. This would be the case where going back to work was possible but doing the work might retard the worker in regaining complete recovery of his health.[3]
The conclusion reached by the trial judge in the instant case conforms with our views and we hold that the described itching plaintiff might suffer, should he return to the occupation of truck driver, is not incapacitating to the extent that it can be considered a disability. On the other hand, there is the possibility that, if the plaintiff returned to truck driving, his recovery from the skin ailment might be retarded or his health might be otherwise impaired. This is indicated to a certain degree by Dr. Hamilton's testimony to the effect that, following flare-ups of the rash, it was necessary to administer antibiotics in order to combat secondary infection. There is, however, nothing in the record sufficient to establish with certainty that plaintiff's health would be injured or the chances for eventual recovery from his ailment would be lessened by his driving a truck for a living, albeit there is an affirmative hint that such is the case in Dr. Hamilton's statement that, in hot weather, "* * * anything that would require exertion would have aggravated his condition." Since expert evidence on this question is necessary for a just disposition of the case, a remand is in order for the taking of pertinent testimony.
Furthermore, a remand of the case is otherwise indicated in response to a motion filed by plaintiff's counsel a few days prior to the hearing and submission of the matter in this Court. In this motion, it is alleged that plaintiff has suffered and is still suffering from the occupational dermatitis in the winter months as well as in the summer and that, on December 13, 1961, he was examined by Dr. Hamilton, who found that plaintiff had excoriated nodules of the right forearm, flexural eczmatoid dermatitis of the neck, with crusting and oozing; some follicullis of the forearm and some livedo or mottling of the skin fairly generalized.
Forasmuch as the case must be remanded, we think, like the Court of Appeal, that the issue of penalties and attorneys fees should be again considered and evidence heard respecting it in the district court.
Accordingly, the judgment of the Court of Appeal is annulled and set aside, insofar as it holds that, on the evidence presently contained in the record, plaintiff is totally permanently disabled and entitled to compensation and the cause is remanded to the trial court for further proceedings consistent with the views herein expressed. Taxation of all costs are deferred until final disposition of the case.
NOTES
[1] See Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So. 2d 1, where the rule is stated thus: "The law does not expect and it does not contemplate, that a worker, in order to make a living, must work in pain, or that he do so when it will materially increase not only the hazards of his own health and safety, but also to those of his fellow employees."
[2] See, for example, Livaccari v. Fidelity & Casualty Co. of New York, La.App., 118 So.2d 275, where a pipefitter could carry out most of his duties but could not lift heavy pipe without experiencing severe pain and, consequently, had to depend on fellow workers for help.
[3] See Knispel v. Gulf States Utilities Company, 174 La. 401, 141 So. 9 and compare Coats v. Windsor, La.App., 167 So. 483, where compensation was denied, notwithstanding that it was found that returning to the job involved considerable pain to the employee, because the medical testimony was to the effect that working would, rather than retard recovery, be beneficial to the injured member and accelerate the healing process.