HOOD, Judge.
In this workmen’s compensation suit plaintiff contends that he is totally and *418 permanently disabled as the result of a skin infection sustained by him during the course of his employment. The suit was instituted against his employer, The Dixie Drilling Company, Inc., and its compensation insurer, American Insurance Company. After trial, judgment was rendered by the trial court in favor of plaintiff for maximum benefits based on total and permanent disability, and for penalties and attorney’s fees. Defendants have appealed.
Plaintiff worked on and around oil well drilling rigs for approximately 12 years prior to 1961. During the middle and latter part of that year he was employed by defendant, Dixie Drilling Company, as a “driller” in connection with the drilling of oil wells. In performing his duties as a “driller” he came into frequent and prolonged contact with caustic drilling mud and other chemicals used in drilling for oil.
In the early part of May, 1961, plaintiff developed a skin rash or infection on his arms. He received medical treatment immediately, but the rash generally became worse and he voluntarily left his employment on August 19, 1961, which was about three and one-half months after the rash first appeared. His skin condition completely cleared up by September 1, 1961, or about 12 days after he discontinued his employment, and the rash has never reappeared. Since leaving that employment in August, 1961, plaintiff has never returned to work as a driller, and he has never done any work which has required him to come in contact with drilling mud or other chemicals used in drilling oil wells.
During, the 12-year period immediately prior to May, 1961, while plaintiff worked regularly on oil well drilling rigs, it was necessary for him to, come into frequent and prolonged contact with a number of different-types' of drilling muds and chemicals used in those operations. At. or about the time this skin rash developed, a new or different kind of chemical, known as “black magic,” was added to the drilling mud which was being used on the well on which-plaintiff was working. Plaintiff had never worked with this “black magic” chemical before except “very little, in California.” The employer, however, obviously realizing that some ill effects might result from prolonged contact with caustic drilling muds, provided two shower baths and other facilities at the site of the drilling operations for the use of employees in removing either black magic or other kinds of drilling fluids from their bodies.
Plaintiff continued to work seven days per week, without a single day off, from the time the rash first appeared in May, until he left his employment on August 19, 1961. Although the rash “cleared up” or - “subsided” to some extent during the last month of his employment, it did not completely disappear until a few days after he left the job. At the time of the trial plaintiff had no rash or skin irritation of any kind. He testified that he was fully capable of doing the same type of work which he had been performing on and around drilling rigs, but he felt that if he did so the skin rash would reappear.
The trial court concluded that plaintiff had suffered a contact dermatitis while performing duties as a driller for defendant, and that he is totally and permanently disabled from performing the usual and customary duties of his employment. Defendants, in contending that the trial court erred, argue that the evidence fails to establish: (1) that there existed a causal relationship between plaintiff’s employment and his alleged skin condition, and (2) that plaintiff is totally and permanently disabled.
The evidence shows that plaintiff consulted his family physician, Dr. Dennis W. Sullivan, a general practitioner, on May 6, 1961, shortly after the skin rash first appeared. The doctor observed at that time that plaintiff had lesions and a rash on both of his arms. He gave plaintiff some medication, including cortiscosporan lotion, to apply to the affected area. He next saw plaintiff on June 10 or 11, 1961, at which time he found the skin condition on his arms -to be *419 somewhat worse. He treated plaintiff but the condition of his skin continued to get worse until sometime in July, 1961, when the doctor felt that plaintiff was disabled. At that time both arms were swollen and infected, there were lesions on them which were open and raw and plaintiff had fever. About five days later, however, the skin condition “had cleared up; that is, it had subsided,” although plaintiff still continued to have a skin irritation on his arms. Dr. Sullivan last treated plaintiff on August 19, 1961, at which time the skin irritation was present, although “there was no severe inflammation.” He diagnosed plaintiff’s condition as a “chronic contact dermatosis” which was “probably due to chronic, prolonged exposure to contact with drilling mud.”
Plaintiff later was examined by four other doctors, one of whom was a general practitioner and three of whom were dermatologists. Some of these experts felt that the rash on plaintiff’s arms was caused by his contact with the drilling ■mud or chemicals used on the drilling rig where he worked, while others felt that the skin irritation was not caused by the mud or ■chemicals. We find no error in the conclusion reached by the trial judge that plaintiff’s skin rash was caused by his ■exposure to some type of drilling mud or ■chemical used in the drilling operations where plaintiff was employed at the time the rash appeared.
The next and most serious question presented, however, is whether plaintiff’s skin condition is of such a nature that it permanently and totally disables him from performing his duties as a driller in the oil and gas industry. The answer to that question depends upon whether the skin rash, the dermatosis or dermatitis has become chronic, that is, whether it will reappear if plaintiff resumes his employment as a driller, where it will be necessary for him to come into frequent and prolonged contact with the drilling muds and chemicals .ordinarily used iij drilling oil wells.
Dr. Sullivan, the original treating physician, testified that in his opinion “occurrences and exacerbations will occur if a patient continues in his present duties; that is, if continued exposure to offending contact agents is continued.” However, when asked why he had failed to send in a medical report sought by defendant, he replied, “because my results were inconclusive — inconclusive—a hundred percent inconclusive.”
Dr. Edward E. Jordan, a general practitioner, examined plaintiff in late September or early October of 1961. Plaintiff’s skin condition had completely cleared up before that examination was made, but based upon a review of plaintiff’s history and an examination of the scars on his arms Dr. Jordan testified that plaintiff’s rash “was probably an allergy” and “that he was allergic to this particular mud.” He expressed the opinion that if plaintiff returned to the same type of employment and came into contact with “the same drilling mud,” he “would get that — I believe he is allergic to the stuff.” He stated, however, that “in order to find out what he is allergic to * * * you have to take a number of tests there — ninety-five or a hundred, maybe.”
We note that the history given to Dr. Jordan and on which he apparently based his opinion was that plaintiff had stopped working after the rash first appeared, that the rash then cleared up but that it reappeared after plaintiff returned to work. Plaintiff’s own testimony shows that this was not the case. Instead, he worked continuously on the oil rig from the time the skin irritation first appeared until he discontinued his employment, and although the rash “subsided” while he was working seven days per week with the drilling mud and chemicals it did not clear up completely until after he finally left his employment.
Dr. Ollie P. Williams, a dermatologist, examined plaintiff on December 12, 1961. He testified that “there was a possibility” that the skin rash was caused by contact *420 with drilling- mud, and that “it’s possible, but not probable” that plaintiff’s skin irritation would recur upon contact with drilling mud. He stated, however, that patch tests “should have been very conclusive as to determining whether he was allergic to the particular compounds.”
Dr. Dudley Youman, a dermatologist who examined plaintiff on March 20, 1962, testified:
“ * * * I can’t say whether return to work and exposure to the same con-tactments would cause him trouble * * *_
***** *
“ * * * I think that the thing that would have been the most help to me would have been when he came in with his dermatitis to break the contact with the material, and see if he got well, and then let him go back and see if he broke out again. If it was an allergy, if I suspected an allergy, then a patch test at that time would have given me some information. If it was just from irritation from the mud, then that wouldn’t have given me any information and I would have still had to let him go back and contact the material * *
When asked specifically whether there would be a recurrence of the rash should plaintiff come into prolonged contact with drilling mud, Dr. Youman replied:
“I can’t answer that. I think that the only way that can be answered is for him to contact the mud again. The chances are that in many of these people they can go back to work if it is not an allergy and they take care to stay just as clean as they can. If it’s an allergy, he’ll break out pretty soon after he contacts the mud.”
Finally, on April 11, 1962, plaintiff was examined by Dr. J. H. Eddy, Jr., a surgeon whose treatment of industrial dermatitis while serving as Medical Director of the Louisiana Ordnance Plant during World War II qualifies him as an expert on contact dermatitis. Dr. Eddy testified that he was “not at all convinced that the mud that he describes is what gave him his rash,” and that in his opinion plaintiff could return to his former job as a driller without a recurrence of the rash.
LSA-R.S. 23:1031.1 provides that:
“A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, * * shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
“B. An occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature of the work performed. * * *
“(5) Dermatosis. * * * ”
Under the above-quoted provision of the Revised Statutes, the plaintiff in a workmen’s compensation case has the burden of proving by a preponderance of the evidence that he is disabled because of the contraction of a dermatosis in the course of his employment as a result of the nature of the work he performed for his employer. See Costanza v. Crowson Equipment Co., Inc., La.App. 1 Cir., 144 So.2d 217; Jenkinson v. Clemons, La.App. 1 Cir., 144 So.2d 181; and Kraemer v. Jahncke Services, Inc., La.App. Orl., 83 So.2d 916 (Cert, denied). And, it has been settled that speculation, conjecture, mere possibility and unsupported probability, are not sufficient to support a judgment for the plaintiff in compensation cases. See Roberts v. M. S. Carroll Co., Inc., La.App. 2 Cir., 68 So.2d 689, and cases cited therein at page 693.
Plaintiff has cited and relies on the case of Anderson v. Rowan Drilling Company, La.App. 3 Cir., 150 So.2d 828 (Cert. denied), in which case we found that the petitioner had a chronic contact dermatitis disabling *421 him from performing work which required that he come in contact with certain chemicals, although we denied his claim for compensation benefits on other grounds. In that case, however, the skin rash cleared up after plaintiff left his employment, but it reappeared immediately after he resumed the type of work which made it necessary that he come in contact with the same kind of chemicals, thus establishing that he had developed an allergy to those particular chemi-icals. In the instant suit, unlike the facts in the Anderson case, plaintiff did not return to his former type of employment after the rash cleared up.
We have considered three other cases involving claims for compensation under LSA-R.S. 23:1031.1 based on the alleged contraction of a dematosis or dermatitis in the course of plaintiff’s employment. In each of those suits the claimant was found to have a contact dermatitis, although in two of the three instances recovery was denied for other reasons. See Olivier v. Liberty Mutual Insurance Company, 241 La. 745, 131 So.2d 50; Glidden v. Alexandria Concrete Company, 242 La. 626, 137 So.2d 894; and Bettis v. Perry, La.App. 3 Cir., 155 So.2d 862. We think each of these cases, however, is distinguishable from the instant suit. In the Olivier case, for instance, a “patch test” established that the plaintiff, a plasterer’s apprentice, was allergic to a chemical contained in cement, and the evidence showed that his dermatitis reappeared immediately when he again attempted to do plastering work. In the Glidden case the plaintiff, a cement truck driver, was found to have a chromatic reaction to chromates contained in cement, and he experienced frequent flare-ups when he came in contact with cement. In the Bettis case the plaintiff, a plasterer and cement worker, was found to be allergic to cement; and when he attempted to return to his employment after the skin rash had cleared up the dermatitis “at once returned.” In the instant suit, unlike all of the above-cited cases, plaintiff did not return to his former type of employment after the rash cleared up, and no patch tests were performed to determine whether he was allergic to drilling muds or chemicals used in drilling oil wells. So, the only evidence on which plaintiff can base his claim that the rash will recur if he resumes his employment as a driller is the opinions expressed by the medical experts.
We think the opinions expressed by the three dermatologists who testified are entitled to greater weight than those of the general practitioners. Thomas v. Lobrano, La.App. 2 Cir., 76 So.2d 599 (Cert. denied) ; Allen v. Coal Operators Casualty Company, La.App. 3 Cir., 124 So.2d 344; and Harris v. Great American Indemnity Company, La. App. 3 Cir., 142 So.2d 594. One of these dematologists is of the opinion that the rash will not recur if plaintiff resumes his employment. The other two, interpreting their testimony in a light most favorable to plaintiff, may be said to concede that there is a possibility that the skin irritation would recur upon contact with drilling muds or chemicals. They point out, however, that since plaintiff has not exposed himself to-these substances after the rash cleared up and since no patch tests have been performed, it is impossible for them to determine whether plaintiff has an allergy, and if so, to what substances he is allergic.
The testimony of the general practitioners also is of little help to the plaintiff. Dr. Sullivan, although expressing the opinion that plaintiff has a chronic contact dermatitis, also states that his opinion is “inconclusive.” And, as has already been pointed out, Dr. Jordan’s opinion was based upon an incorrect history.
In our opinion the evidence fails to established that the skin rash or dermatitis which plaintiff had in 1961 will recur if plaintiff resumes employment as a driller and thus comes into frequent contact with drilling muds and chemicals used in drilling oil wells. It would be mere speculation to hold otherwise. We think the trial court erred, therefore, in finding that plaintiff is permanently and totally disabled.
*422 In a workmen’s compensation suit such as this, where the plaintiff fails to prove an essential element of his case but there is a reasonable indication that additional evidence sufficient to establish this essential fact can be supplied, then in the interest of justice we ordinarily will remand the case to the trial court for this additional evidence. In the instant suit plaintiff has failed to prove an essential element of his case, that is, whether his skin rash will reappear upon further contact with drilling’ muds or chemicals ordinarily used in drilling oil wells, but there is no indication that additional proof of this can or might be produced by plaintiff if the case is remanded. Also, neither party has asked or suggested that the case be remanded for additional proof. For that reason we have decided to not remand it to the district court. Upon application for rehearing, however, if plaintiff makes a reasonable showing that additional evidence is available to show that plaintiff’s skin condition is of a chronic or recurring nature, then we may consider remanding the case for that evidence.
Although plaintiff’s petition contains a general demand for medical expenses, no evidence of any kind was produced to show the amount of any medical or drug bill which he may have incurred in connection with the treatment of this skin condition.
For these reasons, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendants and against plaintiff, rejecting plaintiff’s demands at his costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.
• Before TATE, HOOD, and CULPEP-PER, JJ.