190 So.2d 147 (1966)
Joe FLOWERS
v.
E. M. TOUSSEL OIL CO., and the Employers Liability Assurance Corporation.
No. 2163.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1966.
Rehearing Denied October 5, 1966.
Writ Refused November 18, 1966.
*148 Owen J. Bradley, New Orleans, for plaintiff-appellant.
Simon, Wicker & Wiedemann, Lawrence D. Wiedemann, New Orleans, for defendants-appellees.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
SAMUEL, Judge.
This is a suit under the Louisiana Workmen's Compensation Act for total and permanent disability allegedly resulting from a knee injury suffered by the plaintiff in an accident which occurred while he was working as a service station attendant. Named defendants are plaintiff's employer at the time of the accident and its compensation insurer. Plaintiff has appealed from an adverse judgment dismissing his suit.
At the time suit was filed plaintiff had been paid compensation benefits in the maximum weekly amount of $35 from June 17, 1964 through February 3, 1965, and weekly sums of $10 thereafter through the *149 first day of trial on June 2, 1965, or a total of $1,395, plus medical charges. At the time of trial he was receiving compensation benefits at the rate of $10 per week, the maximum amount under the act for the percentage disability of his left leg as testified to by plaintiff's medical witness.
The trial court found as a fact that plaintiff was not suffering from any disability within the purview of the act other than that for which he had been and was being compensated. Although all payments were made by the defendants voluntarily, in the trial court they denied the occurrence of the accident as alleged and alternatively denied a causal connection between the accident and the disability of which plaintiff complained. However, as the defendants have not answered the appeal and seek only an affirmation of the trial court judgment, those issues are not before us insofar as that judgment is concerned.
Plaintiff contends he is entitled to total and permanent disability benefits because: (1) although he has worked since the accident, such work has been done in pain of sufficient severity as to be disabling under the act; (2) his injury renders him unable to do work of a kind similar to that which he performed prior to the accident; and (3) the injury is of such a character as to substantially handicap him in competing with able-bodied workers in the common labor market.
Plaintiff sustained a blow to his left knee on May 28, 1964. Several days after the accident his employer sent him to Dr. V. P. Blandino, a general practitioner. The injury failed to respond to conservative treatment, which included aspirating the joint for removal of bloody fluid, and Dr. Blandino suggested consultation with Dr. Irving Redler. On August 10, 1964, following a further period of unsuccessful conservative treatment, an arthrotomy was recommended and performed by Dr. Redler for the removal of the medial semilunar cartilage. During the operation this doctor discovered a condition within the joint cavity known as pigmented villonodular synovitis, an uncommon and serious pathologic condition. On November 18, 1964, after post operative treatment, plaintiff was advised by Dr. Redler to return to work which did not include prolonged squatting, stooping or climbing. Plaintiff was not rehired by the defendant service station. Since his discharge by Dr. Redler he has worked at various jobs including dishwasher, waiter, laborer in construction work, and laborer engaged in landscaping. At the time of trial he was working as a janitor.
Eleven witnesses testified during the course of the trial, six for the plaintiff and five for the defendants. The medical evidence consists of the testimony of two physicians, Dr. Redler, the treating physician, who tesified for the defendants, and Dr. Jack Wickstrom, who examined plaintiff and testified for him. Both doctors are specialists in orthopedic surgery.
Dr. Redler testified as follows: The operation revealed two basic conditions of the left knee, a torn medial meniscus, which is associated with trauma, and pigmented villonodular synovitis, the etiology of which is unknown but which may be aggravated by trauma. The torn medial semilunar cartilage and, insofar as was possible, all of the diseased lining of the joint were removed. The doctor stated it was not possible to remove all of the diseased lining because of the danger of disarticulation. The results of the operation were excellent, much better than this doctor had anticipated or had ever seen in any similar case. The patient made steady improvement, was relieved of his pain and, for practical purposes, made a full recovery. Dr. Redler was unable to find any atrophy, a condition ordinarily expected to occur, the absence of which indicated normal function of the muscles. However, he also testified plaintiff would never return to a 100% normal limb anatomically. In his opinion plaintiff did have a 15% disability of the lower left extremity and, although pain is a subjective thing, the occurrence of pain in connection with squatting and stooping *150 would not be inconsistent with the medical findings. His opinion remained unchanged after reexamining plaintiff before the trial.
Dr. Wickstrom examined plaintiff on two occasions after he had been discharged by Dr. Redler. He was of the opinion that plaintiff's residual disability represented 17% of the lower left extremity. He felt the synovitis condition, which was permanent and had not been eradicated by the operation, had been aggravated by the trauma involved in the accident. While he agreed the etiology of pigmented villonodular synovitis is unknown and cannot be said to result from trauma, the condition characteristically can go in cycles and become worse, particularly if plaintiff reinjures his knee. This doctor testified he cannot say whether or not plaintiff would be free of pain. However, he did believe plaintiff had reason to have pain when he squats, when he gets down, when he kneels or goes up and down steps and simply from exhaustion; and plaintiff can be expected to have some discomfort from normal, active use of the knee.
Plaintiff's four lay witnesses were his wife, a person for whom (or with whom) he worked in construction both before and since the accident, a fellow laborer with whom he worked before and since the accident, and a service station operator who testified to the usual type of work performed by service station attendants, which work does involve stooping and squatting.
The testimony of these witnesses (other than the service station operator) was that plaintiff was able to perform hard manual labor without difficulty prior to the accident and unable to do so after. The person for or with whom he worked was engaged in construction. He testified that after the accident plaintiff was unable to keep up with the remainder of the crew, only worked part time and never a full day, complained of his leg, couldn't dig or bend and, because of the friendship between this witness and plaintiff, was allowed to rest at various times during work and also was allowed to avoid the heavier tasks. The fellow worker testified to the same effect both as to the construction work and as to other work in which he, the plaintiff and others engaged at Michoud in connection with landscaping. This witness testified that on the landscaping job he dug three holes to plaintiff's one and plaintiff was given the lighter tasks to perform.
Plaintiff testified: After the doctor advised him to return to work he did so for a few days but could hardly get around. He did not work for three or four days and then had to get work to pay his rent and support his wife and children. His knee was still hurting and swollen but because of economic necessity he has held a variety of jobs since the accident. There are times when he is doing nothing at all and the leg will hurt just as badly as if he were standing up all day. He still has stiffness in the leg and finds it sore at times, particularly in the afternoons. He further testified he was unable to use his left leg in digging with a shovel.
Defendants' four lay witnesses were the defendant service station operator, the individual for whom plaintiff had worked on the landscaping job at Michoud, and two private investigators hired by defendants. The testimony of the service station operator is not material in this appeal since it involves little more than the occurrence of the accident. Plaintiff's employer on the Michoud landscaping job testified plaintiff had been one of his best workers in that excavating and planting work; plaintiff did the same amount of digging, kneeling and squatting as did the other members of the crew, and the work involved a great deal of such motions. In addition plaintiff proficiently operated a truck and a tractor, the latter being an operation involving a difficult double clutch which required an unusual amount of left foot pressure. This witness testified he observed no physical impairment or difference in the performance of plaintiff's work from that of the other laborers and while plaintiff was working for him he was not aware that plaintiff *151 had been injured. The two investigators observed plaintiff's actions while working on the landscaping job and took some motion pictures of that work. Their testimony, and the pictures to some extent corroborate the same, is that plaintiff was able to and did perform all the requirements of the work apparently without difficulty, keeping up with the other men in the crew. They particularly noted his actions in using a pickax and shovel. The pictures taken by them, and observed by us, show plaintiff digging with a shovel and using his left leg in a generally normal manner.
In this court his counsel concedes that plaintiff is an unskilled common laborer and that his testimony as to inability to use the injured leg in digging with a shovel, and in some other respects, was untruthful. But he argues that the truthfulness of plaintiff's testimony as to his inability to work without considerable pain has been established by the testimony of both medical experts.
A workman is disabled and entitled to compensation under the act when, although physically able to work, he cannot do so without suffering substantial pain and discomfort. Where it is not shown that performance of the work would either be injurious to his health or increase the hazards to the health of himself and his fellow workers, in order to constitute disability the pain must be sufficiently intense as to prevent the worker from carrying out his job or some of the functions thereof; and the question of whether a claimant is unable to work without pain sufficiently severe as to be considered disabling is one of fact. Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138; Glidden v. Alexandria Concrete Company, 242 La. 625, 137 So.2d 894; Boucvalt v. Boucvalt, 233 La. 760, 98 So.2d 179; Brannon v. Zurich General Accident & Liability Ins. Co., 224 La. 161, 69 So.2d 1; Stieffel v. Valentine Sugars, Inc., 188 La. 1091, 179 So. 6; Carlino v. United States Fidelity & Guaranty Co., 196 La. 400, 199 So. 228; Veillion v. Knapp & East, La.App., 158 So.2d 336; Thomas v. Gates, Inc., La.App., 157 So.2d 263; Malone, Louisiana Workmen's Compensation Law and Practice, Sections 272-275.
In the instant case the evidence is conflicting on the issue of pain. Plaintiff did testify he suffered severe pain while performing his tasks. This testimony is supported in part by his lay witnesses and by that portion of the medical testimony which is to the effect that such pain is consistent with the medical facts. But neither medical witness testified considerable pain necessarily would occur; the excellent results of the operation and plaintiff's unusually fine recovery make such occurrence problematical. And the lay testimony offered by the defendants, particularly that of plaintiff's employer in the landscaping work, is directly contrary to the testimony of plaintiff and his lay witnesses on the issue of pain. In addition, plaintiff did give some testimony which was untruthful and which casts doubt on the balance of his testimony; and plaintiff does bear the burden of establishing his claim by a preponderance of the evidence. We cannot say the trial judge erred in concluding that plaintiff was not totally and permanently disabled under the act as a result of pain.
Plaintiff's second and third contentions, that his injury renders him unable to do work of a kind similar to that which he was doing prior to the accident and that the injury substantially handicaps him in competing with able-bodied workers in the common labor market, will be discussed as one. The contentions are expressions of two tests used by the courts to determine whether the worker is totally and permanently disabled within the intendment of the compensation statute as a result of being unable to do work "of any reasonable character" in the words of that act. Funderburk v. Southwestern Iron Corporation, La.App., 180 So.2d 4; Smith v. Travelers Insurance Company, La.App., 174 So.2d *152 241; Kemp v. L. L. Brewer Lumber Co., La.App., 168 So.2d 911; Williams v. Zurich Ins. Co., La.App., 159 So.2d 391; Thomas v. Gates, Inc., supra. We are of the opinion that, within the meaning of the act, plaintiff is not totally and permanently disabled under either test.
Total disability for the common laborer is not determined by the same criteria used in the case of the skilled or semi-skilled worker. As pointed out in Malone La. Work Comp. Sec. 375, the rule that the skilled or semi-skilled worker is regarded as totally disabled when an accident causes the loss of physical faculties which had enabled him to earn his living in a particular trade or calling, even though he is still able to qualify for a job of a different nature, does not apply to the wholly unskilled or common laborer. The disability suffered by the common laborer must be evaluated in terms of its relative effect upon the victim's ability to obtain work of any reasonable character, and not necessarily the same type of work in which he was engaged at the time of the accident, in the flexible market for common labor. Without reflection on plaintiff's commendable action in endeavoring to support his family, we find he is not incapacitated from employment in many fields of labor. This is shown by his work in several capacities since the date of the accident and the finding of the trial court that he was able to perform that work without considerable pain.
From our reading of the entire record it is possible that plaintiff's alleged disability did not result from either the torn medial semilunar cartilage or the aggravation of the synovitis condition occasioned by the accident, that such disability was the result of the synovitis condition itself, and that the operative procedures relative to the synovitis, because of the accident performed earlier than would otherwise have been the case, were of material benefit to that serious condition. But, as we have concluded plaintiff is not totally and permanently disabled as a common laborer, it is unnecessary for us to consider the question of whether the disability of which plaintiff complains, even if such disability did exist, is the result of the accident or of the prior existing pigmented villonodular synovitis.
The judgment appealed from is affirmed.
Affirmed.