REID, Judge.
Plaintiff, Earl Wayne James, instituted this suit against his employer, Steers and Morrison-Knudsen, and its workmen’s compensation insurer, Aetna Casualty & Surety Company, for total and permanent disability resulting from a dermatitis allegedly contacted in the course and scope of his employment.
Plaintiff’s petition alleges that on or about December 16, 1963, he was suffering a rash on his entire body, particularly around the area of his eyes, as a result of the work he was required to do for his employer; that his condition was diagnosed as a skin disease caused by the creosote and heavy oily substance on the pilings and timbers located on the premises where he was required to work; and that his condition had been diagnosed as an occupational skin disease which would break out again if plaintiff had to work around timbers treated with creosote or oily substance, and, therefore, he had been totally incapacitated to do work of any reasonable character and thus was permanently and totally disabled for the performance of his trade and occupation. Plaintiff prayed for compensation at the rate of $35.00 per week, beginning December 16, 1963, for 400 weeks, plus interest on each past due payment, and also for $2,500.00 medical expenses, $1,000.00 attorney’s fees, and penalties.
The defendants filed a general denial except to admit that on or about October 25, 1963 plaintiff was sent to a physician for difficulty with his wrists and was subsequently hospitalized, and alleged payment of compensation in the amount of $84.50 from November 14, 1963 to December 1, 1963, together with substantial medical expenses.
*97 Plaintiff Earl Wayne James died on February 27, 1966, and his widow was substituted as party plaintiff in the place of her husband.
The case was tried and submitted on written briefs, and for reasons handed down by the Court on July 30, 1968, judgment was rendered in favor of plaintiff and against the defendants, in solido, awarding plaintiff compensation at the rate of $35.00 per week, beginning on December 12, 1963, until February 27, 1966, the date of death of plaintiff, with interest, and decreeing that Maymee M. James, substituted party plaintiff, receive the sums due her deceased husband. The judgment further fixed the fees of the expert witnesses, Dr. Marion E. Kopfler and Dr. Joe C. Til-ley, at $50.00 each, to be taxed as costs, all costs to be paid by the defendants. The Court decreed the defendants not unreasonable or arbitrary in refusing to make compensation payments and the plaintiff’s demands in that respect were denied.
On motion of counsel for defendants, an order of suspensive, and in the alternative devolutive appeal was entered on August 23, 1968.
Appellants, Aetna Casualty & Surety-Company, hereinafter denominated “Aet-na,” and Steers and Morrison-Knudsen, hereinafter denominated “Steers and Morrison,” filed only one specification of error, namely, that the lower Court erred in finding that Earl Wayne James, hereinafter denominated “James,” was totally and permanently disabled.
There is no question but what James was an employee of Steers and Morrison in October of 1963 and that he contracted dermatitis which resulted in a disability on or about November 8, 1963. The plaintiff was an iron worker and as such a skilled laborer. He developed this skin condition on his wrists which progressively worsened until about October 24, 1963, when it became so disabling that on October 27, 1963 he went to see Dr. W. T. Brown, a dermatologist. He was admitted to the hospital on November 8 for further examination, evaluation and treatment. Dr. Brown called in Dr. Joe C. Tilley, another dermatologist, who made an examination of the plaintiff, and on November 9, 1963, he did a biopsy on James. He saw James again on November 11, 1963, at which time his diagnosis was “probable contact dermatitis due to some of the materials that he handled in his work.” He only saw plaintiff three times.
Plaintiff was discharged from the hospital on November 13, 1963, and on November 23, 1963, Dr. Brown certified him as being able to return or resume light work on December 2, 1963.
According to the work sheet of defendant company, the plaintiff’s wages declined on the weeks ending November 3 and November 10. He performed no work at all the weeks ending November 17 and 24 and December 1.
He resumed his labors on December 2, 1963, and worked continuously until January 2, 1964, at which time, according to his pay sheet, he stopped working.
In December of 1963, the plaintiff became dissatisfied with his condition, saying that he still had the rash on his arm, hands and legs, and went to see Dr. Marion E. Kopfler, another dermatologist in Baton Rouge. Dr. Kopfler diagnosed the rash as a contact allergy, which was the same as a contact dermatitis. Dr. Kopfler saw the plaintiff several times during the month of December of 1963. He testified that he saw him off and on from December 13, 1963 until April of 1964. He stated that plaintiff would have recurrent rash and it would clear up and then recur. He further testified that he understood James worked with a compound called “form oil” used for treating the iron or the forms. James gave Dr. Kopfler a sample of the form oil for examination. The last time Dr. Kopfler saw the plaintiff in 1964 was on April 4. He did not see plaintiff again until April 9, 1965, and the last time he *98 saw plaintiff was June 21, 1965. He stated that in 1965 he “saw him one-two-three-four times, and he would have a slight flare-up on those four occasions.” He prescribed medication, namely, a cortisone cream to cut down inflammation and relieve the itching. He stated that it would clear up the rash. When he saw plaintiff in April he had little blisters in the palm of his hand that the doctor thought were due to inflammation around the sweat glands. On May 24 his hands broke out mostly about the nails. He stated that at that time the plaintiff had been working on his automobile motor and had come in contact with grease and oil, but that this didn’t have anything to do with his regular employment.
Plaintiff resumed his labors with Steers and Morrison on February 3, 1964, and his first payday was February 9, 1964. From that time on he worked continuously through May 11, 1964, at which time he was laid off.
After leaving there he worked for a couple of small contractors, one of which was Reddy Fabricators. Subsequent to that he worked fnr Sun Erection Company for four or five months as an iron worker in connection with the construction of the docks of the Greater Baton Rouge Port Commission on the west side of the Mississippi River in Port Allen. He was laid off on account of illness, namely, a heart attack, from which he was incapacitated for four months. A few days before the trial of this case he got a job with Nichols Construction Company for whom he was working at the time of the trial.
Plaintiff in his testimony stated that after his heart attack he went to work for Nichols Construction Company on the 6th day of January, 1965. The record discloses that plaintiff worked as an iron worker up until his death on February 27, 1966. According to his testimony he could use rubber gloves and perform his work satisfactorily, although he did state that he could not do some of the things that he formerly did.
There is no question but what if he came into contact with steel on which this substance had been applied it produced a rash on his hands and other parts of his body. However, he testified that if he used rubber gloves he could perform his work satisfactorily and he did so. He received a regular hourly wage of an iron worker, namely, $4.17j^ per hour, the regular rate for an iron worker, and double pay for overtime.
The time he went back to his job and his manner of working is best set forth in his testimony as follows, to-wit:
“A. I went back on their job and worked, and then I had to take off and go back to the hospital and be treated again for it.
Q. How about the next job after you left Knudsen?
A. Well I had a little trouble with it but I didn’t lose no time with it.
Q. You didn’t lose any time ?
A. No, sir.
Q. Now, when you say that you had a little trouble with it, what do you mean by that?
A. Well it broke out on me but I just treated it myself and I didn’t lose any time with it.”
The plaintiff further testified on direct examination in answer to the question “How does it bother you in your work?” as follows:
“Well, it’s just irritating. Dust and stuff gets in it, and when it breaks out on my hands I have to wear those rubber gloves underneath my other gloves and things, and I have got to be very careful about picking up any cables or anything.” (Emphasis ours)
According to our figures, as taken from the work sheet or pay sheet of James, he *99 would be entitled to compensation beginning November 8, 1963 to December 1, 1963, and from January 3, 1964 to February 2, 1964. The record discloses that until the time this case was tried plaintiff worked at his usual trade and occupation, namely, an iron worker, continuously, and received the normal pay that an iron worker was entitled to during this time, except for a period of two months when he was laid off by a strike, four months when he suffered a heart attack, and when his job terminated because the work had been finished.
This brings us to the legal aspects of the case. Plaintiff’s suit is based on that portion of the Workmen’s Compensation Act, LSA-R.S. 23:1031.1, which reads as follows :
“A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, * * * shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.”
The appellants’ contention is that the plaintiff has not suffered total permanent disability which would entitle him to full compensation because he could perform the usual duties pertaining, to his employment with the mere irritations, discomforts, pain, or inconveniences which did not affect his working ability. They cite several cases in support of this. The latest expression of our Supreme Court seems to be the case of LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779. This case holds as follows:
“In fine, in Louisiana ‘disability’ ha always been interpreted and understood to mean inability to perform the same or similar work the employee was doing when injured.
“The sole reason for the adoption of R.S. 23:1031.1 was to alleviate employees from the almost impossible task of proving ‘accident’ in occupational diseases, the statute listing certain specific diseases which, upon proof of contraction thereof, will satisfy the requirement of proof of ‘accident’ so as to be compensa-ble in case of disability therefrom. But we reiterate that it was never envisioned that compensation would be due unless or until disability occurs. Albeit the medical testimony shows that, because of silicosis, plaintiff will impair his health to a greater degree by continuation of his occupation as a sandblaster, the fact remains that plaintiff has continued to work at the same job for the same employer without undue pain or discomfort and, therefore, he cannot be regarded as disabled.”
In the prior case of Glidden v. Alexandria Concrete Company, 242 La. 625, 137 So.2d 894, our Supreme Court held as follows :
“The question, then, is whether plaintiff’s skin condition constitutes total disability with regard to the driving of trucks generally? There is no doubt but that plaintiff is physically able to drive trucks. However, the evidence indicates that, if plaintiff does engage in this work and the physical exertion connected with the usual duties of a truck driver, he would become overheated, perspire and, as the result of his skin condition, be quite uncomfortable from itching. So it is said that plaintiff is disabled as a consequence of the discomfort he must bear, should he resume the occupation of truck driver, for the law will not deprive an injured person of compensation when, although he is physically able to perform his tasks, to do so means he must suffer substantial pain and discomfort.
“It would be illogical, however, to treat this doctrine as encompassing all degrees of discomfort and make a complete or ‘good-as-new’ recovery essential before an employer may stop compensation payments. The pain must be sub *100 stantial enough to be disabling in that it either prevents the worker from carrying out some of the functions of his job or, where the pain is not so intense as to hinder the worker’s fulfillment of his duties, it must be shown that performance of the work would be deleterious to his health. This would be the case where going back to work was possible but doing the work might retard the worker in regaining complete recovery of his health.
“The conclusion reached by the trial judge in the instant case conforms with our views and we hold that the described itching plaintiff might suffer, should he return to the occupation of truck driver, is not incapacitating to the extent that it can be considered a disability. * * * ”
Appellee contends that there is a difference between common labor and skilled labor and that the plaintiff is a skilled laborer and by reason of his dermatitis he is not able to do the work for which he was trained. He contends that a common laborer, even if he was not able to do the work on a particular job, is able to do common labor in other jobs of a similar type and therefore would not be held to be totally disabled. He cites numerous cases in support of this .argument, with which we agree. There is no question but what the plaintiff, James, was a skilled laborer and not a common laborer. However, the distinction to be drawn in this case is that plaintiff could and did perform the same work for which he was specially trained without any great discomfort or annoyance and with only irritation. This was according to plaintiff’s own testimony, and there is nothing in the record which would show that his continuing on his work would seriously impair his health and endanger his life. The record discloses that he worked continuously at the same kind of job, as an iron worker, and received the same rate of pay, and was so working at the time this suit was filed. We, therefore, feel that the plaintiff does not come under the doctrine of the cases cited by the appellee in that he was able and did perform the same work he was doing prior to the dermatitis. It is true that he had to undergo the discomfort of working with gloves, but according to his own testimony, when the rash broke out on his hands he would put a salve on them which the doctor had prescribed, and which gave him relief. We feel that plaintiff is only entitled to temporary total disability for the week beginning November 8, 1963, through December 1, 1963, and from January 3, 1964 to February 2, 1964.
For these reasons the judgment of the trial Court is amended by reducing the award to $35.00 per week for the weeks hereinabove set forth, subject to credits of $84.50 already paid, and in all other respects the judgment of the lower Court is affirmed. All costs of court, including the cost of this appeal, should be borne by defendants.
Amended and affirmed.