COLE, Judge.
Plaintiff-appellant, Walter G. Jackson, appeals the trial court’s denial of workmen’s compensation benefits. He contends that he is totally and permanently disabled as the result of an accident which occurred on June 14, 1968, at Geismar, Louisiana, where defendant-appellee, Allied Chemical Corporation, operates a chemical plant. It is conceded that Jackson did sustain injuries as the result of an accident arising out of the course and scope of his employment. He was engulfed by ammonia fumes when a unit in the manufacturing process malfunctioned. This resulted in him contracting chemical pneumonitis and other related ailments for which he was hospitalized and treated.
The only question presented to the trial court and to this court is whether plaintiff is to be considered totally and permanently disabled under the Workmen’s Compensation Act. In abbreviated written reasons, the trial court held that plaintiff was not so disabled and, in fact, suffered no disability after August 7, 1968.
Plaintiff was initially treated by his family physician, Dr. Charles Lee, who referred him to Dr. Clay A. Waggenspack, Jr., a specialist in pulmonary diseases. Dr. Wag-genspack first saw the plaintiff on July 16, 1968, approximately one month after the accident. He testified that plaintiff’s sinusitis and irritation of the mouth, tongue, and nostrils had subsided but that there was still some evidence of bronchitis and laryngitis. A review of x-rays taken in the hospital shortly after the accident definitely showed chemical pneümonitis. However, x-rays taken by Dr. Waggenspack on August 7, 1968, showed the lungs to be completely clear. Plaintiff was treated fairly regularly from July 16, 1968, until October 3, 1968, for his persistent cough and lower respiratory symptoms. Dr. Waggenspack then advised Mr. Jackson that he “may return to full duty” but admonished him not to go back into an ammonia environment. This was the only restriction placed on plaintiff’s ability to return to work. Plaintiff was next seen by Dr. Waggenspack in March of 1969 for an episode of bronchitis (a chest cold) which the doctor could not say was related to the prior inhalation of ammonia. Then on July 14, 1969, plaintiff was again seen by Dr. Waggenspack, this time as the result of a wheezing episode; and, while the diagnosis of asthmatic bronchitis was definitive, the doctor could not state that the ammonia inhalation caused this asthmatic condition which he had now found *667 for the first time, over a year after the accident.
Dr. Waggenspack was questioned on direct examination, cross examination and by the Court on a least five occasions as to whether plaintiff’s asthma is causally connected to the accident. The least that can be said is that the many statements of Dr. Waggenspack on this point do not equate to proof of a causal relationship by anything resembling a preponderance of the evidence. “I cannot demonstrate a causal relationship (Tr. 53)”, is the best summation of his pertinent testimony.
The thrust of plaintiff’s case is that because of his sensitivity and his asthmatic condition, he can no longer perform work reasonably of the same kind and character that he was accustomed to performing, thus rendering him totally and permanently disabled within the meaning of our Workmen’s Compensation Act. We disagree. Mr. Jackson was employed as an operating technician, or operator, at the time he was injured. According to the testimony of Mr. Robert J. Husband, supervisor of personnel for defendant, an operator is the lowest classification of employment among employees who operate the plant. The duties of an operator entail a number of elemental tasks generally including the taking of samples for laboratory analysis; watching instruments such as pressure gauges and level indicators; logging readings from these gauges in order to insure proper functioning of the plant apparatus; and, checking all equipment within his assigned area, reporting any trouble to a superior. The training received by operators is primarily on-the-job. Tasks performed are under the supervision of personnel possessing more training and skill. At the time of his injury plaintiff was the “field” man in the ammonia plant, whose job it was to implement instructions received from the “board operator”. Plaintiff admitted that although he had worked for Allied Chemical over a year and a half he was not qualified to operate the ammonia plant without direct supervision.
Testimony was adduced to the effect that the duties of an operator are essentially the same in all eleven plants comprising defendant’s Geismar complex. We must conclude then, that the job of operator, whether in the urea plant, the phosphoric acid plant, the ethylene plant, the ammonia plant, or in any other plant operated by defendant, requires no particular skill nor is it a specialty limited to a particular plant or area. It cannot be said, therefore, that because plaintiff is restricted from an ammonia environment he is totally and permanently disabled as an operator. The record reflects a number of plants or areas, even within the defendant complex, where ammonia is not used and thus poses no threat to the plaintiff’s health.
The situation is very similar in concept to that found in Glidden v. Alexandria Concrete Company, 242 La. 626, 137 So.2d 894 (1962), where a cement truck driver developed “cement dermatitis” and a resulting sensitivity to cement. The Supreme Court held that the field of truck driving was broad enough so that the plaintiff could pursue his occupation notwithstanding the fact that he could no longer drive a cement truck. Accordingly, it was held that plaintiff was not totally and permanently disabled from truck driving. See also Peltier v. Liberty Mutual Insurance Company, La. App., 230 So.2d 591 (1st Cir. 1969); Anderson v. Rowan Drilling Company, La.App., 150 So.2d 828 (3rd Cir. 1963); Saltzman v. Lone Star Cement Corporation, La.App., 55 So.2d 674 (Orl. Cir. 1952). For similar reasons we hold that an operator sensitive to ammonia is not totally and permanently dis-bled from being an operator.
We reiterate that Dr. Waggenspack’s restrictions on plaintiff’s activities in the months immediately subsequent to the accident were only with regard to ammonia gas. Plaintiff was not to' return to work in an ammonia environment. Mr. Husband testi *668 fied he spoke to plaintiff on several occasions from July to October, 1968, regarding his return to work. On October 17th, plaintiff informed Husband that he was not going to return to work at the Geismar complex and it was at this point that.his employment was terminated. Dr. Waggens-paclc had released plaintiff on October 3, 1968, to return to full duty with only the restriction against working in an ammonia environment.
It was not until Jackson developed the mild asthmatic bronchitis condition that Dr. Waggenspack suggested he not work in any inhalant vector environment that might be deleterious to his health. Specifically, it was suggested that he not work in the elements but to try and find indoor employment It may well be that since the development of the asthmatic condition Jackson is not able to work as an operator. However, since it has previously been demonstrated that this asthmatic condition is unrelated to the ammonia inhalation, whatever disability he may suffer is not related to or connected with the injuries sustained by him on the job.
 In summary, plaintiff’s only accident related disability is as regards the prohibition against his working around ammonia. He can work as an operating technician in any plant where there is no such exposure. This, of course, excludes the plant in which he was working at the time of the accident. However, there is no rule of law that renders him disabled because he cannot return to the exact job he was performing at the time of injury. The work need only be reasonably of the same kind and character to which he is accustomed and and is capable of performing. In this instance, work of a similar description satisfies the requirements of law. We concede that were the use of ammonia common to petro-chemical industries in the economic environs of Baton Rouge, thereby adversely affecting plaintiff’s ability to compete for employment as an operating technician in the labor market, he would be rendered totally and permanently disabled. There is, however, no proof in the record that the exclusion of work in ammonia areas is a serious impairment of plaintiff’s capacity to work as an operator. The burden of such proof is upon the claimant. He must show that industrial plant work involving ammonia bears such a high ratio to general industrial employment available to operating technicians as to substantially prejudice him in competing with able-bodied workers for employment in the market. See Haynes v. Atlas Construction Company, La.App., 199 So.2d 387 (1st Cir. 1967). The true test here is whether Jackson is excluded from performing work as an operating technician, not whether he can return to work as an operator in an ammonia plant. It is the type of work done by him that must be considered in determining disability, not the field of business in which the defendant is engaged.
We conclude, as did the trial judge, that Walter Jackson is not totally and permanently disabled within the meaning of the Workmen’s Compensation Act. Assuming arguendo, that he is so disabled, he has not proven that his disability is the result of a work related accident.
A final argument advanced by plaintiff is that the trial judge erred in not granting his motion for a new trial, or, alternatively, granting a judicial review of the judgment under R.S. 23:1331. Counsel for plaintiff has made an industrious effort but these arguments are not meritorious.
The motion for a new trial was based on the allegation that since the merits were heard, plaintiff had garnered new medical evidence which would further support his contentions of disability. It was stated that since the trial plaintiff underwent surgery by Dr. R. J. Coe for conditions of his sinus which resulted from the accident.
*669 The motion for a new trial was filed September 4, 1970. Since plaintiff was proceeding on the basis of new evidence he was required to have his motion verified by affidavit. C.C.P. Art. 1972(2) recites that a new trial shall be granted where a party has discovered new evidence which is important to the case and which could not, with due diligence, have been obtained before or during the trial. C.C.P. Art. 1975 states that when the motion for a new trial is based on Art. 1972(2), the allegations of fact therein shall be verified by the affidavit of the applicant. Here, the affidavit of the applicant was not filed until September 28, 1970, some three weeks after the motion was filed. We thus, cannot consider the motion as timely perfected. Moreover, plaintiff testified (Tr. 94) that he had seen Dr. Coe, an ear, nose and throat specialist, as late as three or four weeks prior to the trial. Yet, Dr. Coe was not called to testify. We are compelled to conclude that Dr. Coe’s testimony would have added nothing new to plaintiff’s evidence and that the trial judge was within his discretion in denying the application for a new trial.
Finally, R.S. 23 :1331 is not applicable when a plaintiff is found to have fully recovered from his accident prior to trial and no compensation is awarded, as was here the case. A judgment denying additional compensation cannot be reopened under R.S. 23:1331. See Lacy v. Employers Mutual Liability Insurance Company of Wisconsin, 233 La. 712, 98 So.2d 162 (1957); McGee v. Augenstein Construction Company, La.App., 147 So.2d 889 (1st Cir. 1962). The reason for this principle was simply stated by the Supreme Court in the Lacy case, supra. It is that the obligation has been extinguished and there is nothing to modify.
For the assigned reasons, the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.