BOUT ALL, Judge.
This is a workmen’s compensation suit in which plaintiff, Raymond Miller, Jr., alleges disability due to an industrial accident which severed the tip of his middle finger on the left hand. The trial court, after a two day trial rendered judgment for the plaintiff under the provisions of LSA-R.S. 23:1221(4)(c), which is a specific award for loss of function of the finger. Plaintiff appeals, seeking an award of temporary, total disability.
The facts show that plaintiff was a sawyer and apprentice cabinet maker with defendant, Alex J. Kondroik Millwork Company, Inc. On April 7, 1972 plaintiff’s left hand was caught in a planer resulting in the amputation of the distal phalanx of the middle finger. Plaintiff was taken to the hospital where the finger was operated on by Dr. Byram. Three workdays later plaintiff returned to work with his finger heavily bandaged. He attempted to resume his former duties with defendant, however, the pain of the recent amputation plus the awkward bandage caused his supervisor to relegate him to more menial tasks. Two weeks after returning to his former employment he quit his job in a dispute with the company over the amount of pay due him for this period when he did not work full time.
Following his resignation from the mill-work’s employ he found work with the Henry Oliver Construction Company doing somewhat similar work, mainly cabinet work and installation. Although there is no corroborative testimony in the record concerning plaintiff’s employment there, plaintiff testified that he worked there for two weeks during June of 1972 and was terminated for failing to produce enough work. Plaintiff further testified that he experienced trouble trying to do the work because his finger bothered him most of the time, causing him to drop his tools and materials.
Following his termination by Oliver Construction Company he became employed by Southern Hardware Company, again doing similar work, mainly cabinet construction work. Plaintiff held this job for six months, until the end of December, 1972. Plaintiff testified that his finger bothered him the entire time he was employed there. The specific complaint was that every time he struck his finger on an object, which was often in his trade, it would cause an electric-like shock in his finger and up his arm. This shocking type pain caused him to drop whatever he had in his hand and slowed down his production somewhat. The foreman for Southern Hardware testified that plaintiff complained to him on an average of twice a day about his finger. The president of Southern Hardware did not testify, but, the parties stipulated that his testimony would have been that plaintiff was a good worker, produced satisfactory work, however, he was terminated because he could not produce the work fast enough.
Plaintiff had two operations on his finger. The first was performed by Dr. By-ram immediately after the amputation. The second was performed two years later by Dr. Adatto in April of 1974. Dr. By-ram testified that he followed plaintiff’s progress after the operation and that he remembers him complaining of pain in his finger tip. The doctor explained that he did not consider this unusual for a post-traumatic amputation symptom but he did not consider it excruciating or incapacitating. Dr. Byram explained to plaintiff that these symptoms of pain often linger a while after an amputation. The doctor treated plaintiff from April of 1972 until May of 1973 at which time he still noted the increased sensitivity of the finger and apparently continued to assure plaintiff that it would subside.
Following the first day of trial (Feb. 7, 1974), plaintiff returned to Dr. Byram for examination on Feb. 20, 1974. He made *571 the same complaints of pain, and the doctor found some enlargement on either side of the finger with slight tenderness which could be a neuroma. He felt plaintiff had a 25% disability of the finger, that he would have some sensitivity and discomfort occurring if he struck the end of the finger against some surface. Dr. Byram’s physical findings, he explained, would be consistent with the later determination by Dr. Adatto on surgery of two epidermal cysts and a flexiform neuroma. He dis-' cussed the possibility of surgery with plaintiff’s attorney.
Thereupon, plaintiff saw Dr. Kenneth Adatto, specializing in orthopedics and hand surgery, on March 8, 1974. He diagnosed the problem as an entrapped neuro-ma and successfully operated on it in April of 1974, at the same time removing two cysts. Dr. Adatto explained that neuromas are small bundles of nerve endings which always form after an amputation. Generally, this bundle forms well within the fleshy part of the amputated limb or finger and does not cause any problem. Occasionally the bundle will form very near the surface of the skin and when this occurs it causes the person to experience electric-like shocks upon striking that area. This was the case with plaintiff. It was Dr. Adatto’s opinion that plaintiff was, taking into consideration his occupation, totally disabled from the time of the accident until approximately three weeks after the second operation. By the time of the second day of the trial in June, 1974, plaintiff was experiencing no pain or difficulty with his finger.
It is not disputed that plaintiff lost the tip of his finger and that a neuroma formed on that amputated tip. The issue is the extent of disability. The trial court felt that plaintiff had not shown a disabling injury and therefore granted only an award for loss of function under the specific schedules in the act. We are of the opinion that both the medical and lay testimony support a finding that plaintiff was temporarily, totally disabled, because he could only work with substantial pain.
The defendants contend that plaintiff suffered a loss covered by the schedule in LSA-R.S. 23:1221(4) and that is his sole remedy. However, the jurisprudence is clear that the schedules apply only in the absence of any proven disability. That is to say that a person who incurs a scheduled loss and a resulting disability could recover under any section of R.S. 23:1221, but not two of them. To this extent the schedules are not exclusive remedies if the claimant can prove his disability, as did the plaintiff in this case. Adams v. St. Paul Fire & Marine Insurance Company, 270 So.2d 307 (La.App. 1st Cir. 1972); Papillion v. Employers Liability Assurance Corporation, 146 So.2d 448 (La.App. 3rd Cir. 1962).
It has long been a part of our compensation law that a worker is disabled if his injury results in him having to work in substantial pain. Herbert v. Your Food Processing & Warehouse, Inc., 248 La. 197, 177 So.2d 286 (S.Ct.1965); Lewis v. Weise, Inc., 268 So.2d 147 (La.App. 1st Cir. 1972); Flowers v. E. M. Toussel Oil Co., 190 So.2d 147 (La.App. 4th Cir. 1966). It is not necessary that this pain be a constant pain. It is sufficient that the normal duties of the occupation cause the worker to experience frequent, substantial pain.
The testimony in this case shows plaintiff understandably worked in substantial pain immediately after the accident and that as late as 13 months after the accident Dr. By ram still noted pain and sensitivity in the finger. He noted a similar condition after the first trial day. Two years after the accident Dr. Adatto demonstrated the sensitivity when he diagnosed plaintiff’s ailment as an entrapped neuro-ma, and successfully operated on it. The last time plaintiff worked at his occupation was in December of 1972 and the foreman of Southern Hardware Company testified that plaintiff complained to him about his *572 finger at least twice a day. Thereafter he worked in other occupations as a salesman.
We hold that the above facts evidence a temporary, total disability and for that reason we amend the judgment appealed from to increase the award of the trial court to compensation benefits of $49.00 a week for 113 weeks, with legal interest on each past due weekly installment from its due date until paid.
As amended the judgment of the trial court is affirmed at appellee’s cost.
Amended and affirmed.