SAVOY, Judge.
This is an action for workmen’s compensation. The defendant has appealed to this Court from an adverse judgment of the district court awarding plaintiff compensation at the maximum statutory rate for total and permanent disability, but denying attorney’s fees and penalties, subject to a credit for benefits previously paid. Plaintiff did not appeal or answer the appeal.
Plaintiff, an uneducated negro, worked as a common laborer for the defendant who operates a small rendering plant. His duties consisted mainly of driving a truck to various slaughter houses to pick up waste materials usually contained within fifty-five gallon drums. Plaintiff’s left hand was seriously injured when it was struck by an overtaking car as plaintiff opened the left door of the truck. The injury resulted in the amputation of the middle finger of the hand.
It was stipulated that the employment was hazardous in nature, the injury occurred during the course and scope of plaintiff’s employment with defendant, that plaintiff’s salary was $65.00 per week, and that defendant had paid compensation to plaintiff amounting to $1,032.50 as well as certain medical expenses.
The principal issue is whether or not the district court erred in finding the plaintiff to be unable to perform the work he was doing at the time of the accident without *71 experiencing substantial pain. Defendant maintains that the medical evidence preponderates in favor of defendant in showing that there is no reason why plaintiff cannot return to the kind of work he was doing prior to and at the time of his injury without pain of any consequence. Defendant contends that plaintiff has at best a non-functional disability for which he is entitled to $35.00 per week for twenty weeks, or $700.00; or alternatively, he is entitled to $35.00 a week for the period of his total temporary disability during the period of convalescence which totalled $1,032.50; or in the further alternative, should the court find he has a partial permanent disability of his hand, which the treating doctor fixed at 20%, then he could under no circumstances be entitled to more than 20% of 65% of his average weekly wages of $65.00, or $10.00 per week, which.ever is greater, for a period of 150 weeks, less the amount of compensation previously paid.
Plaintiff maintains that the facts of the case clearly show that the injuries sustained to his left hand, with resulting impairment thereof, causes him to be permanently and totally disabled within the meaning of the Workmen’s Compensation Act, as was found by the district court.
The medical evidence in the record is composed of the depositions of three doctors, Dr. D. J. Palmintier, Dr. J. Boring Montgomery, and Dr. Fred C. Webre.
Dr. D. J. Palmintier, a surgeon of Lafayette, Louisiana, examined the plaintiff at the emergency room of the hospital on October 16, 1963, and found him to have a severely mangled left hand. Surgery was immediately performed and the middle finger was amputated at the metacarpal pha-langeal joint. Dr. Palmintier followed his treatment of plaintiff in the hospital for three or four days, and afterwards saw plaintiff every few days until the area was healed on November 26, 1963, at which time he discharged plaintiff. He saw plaintiff again on January 7, 1964, and found plaintiff to have a páinfül area- in the old scar which he interpreted' as being a neu-roma, which was removed by surgery on February 26, 1964. Plaintiff again attempted to return to work, bút because o'f the pain, returned'again to Dr. Palmintier'who performed a third surgicál- operation for the removal of a neuroma-on June 25, 1964. Plaintiff was again discharged from treatment on July 22, 1964. Plaintiff returned again on September 15, 1964, stating that he was still having discomfort in the area of the old scar, and Dr. Palmintier found his hand was real coarse at that-time and prescribed active exercises ’ and some cocoa butter ointment and massage's to soften the area. On September 30, 1964, he injected the area with carbocain/an anesthetic agent, which did not seem to do much good for the discomfort of which plaintiff complained. At the date of last treatment!, September 30, 1964, Dr. Palmintier suggested that plaintiff return if he continued to have further trouble and advised him to return to his work, to use active exercises and massage his hand. Plaintiff did not return for treatments; but on request of the defendant was examined again by Dr, Palmintier on March 6, 1965. At that time, plaintiff complained that he still had discomfort in the scar and hand itself. The doctor found numbness on the inner aspect of the index finger and the outer aspect of the ring finger, which was localized in these areas, and was due to previous surgery in the removal of the nerve and the neuroma. He found stiffness of the index finger which plaintiff was able to bend to nearly one-half inch of the palm of the hand. This stiffness could have been caused from injury to the ligamentous or muscular structure of the finger because of the deep cut and bruising. He noted an early callus formation in the left hand, which indicated plaintiff had been using this hand. The injury to the hand considerably reduced the strength of the hand and plaintiff’s ability to grasp. In evaluating the disability to plaintiff’s hand, the doctor stated that the ability of plaintiff to work would depend upon the amount and type of use plaintiff *72 ■would have to put to his left hand.' In describing the work to which plaintiff could return, it was his understanding of the job that plaintiff was not required to make full use of more than one hand, and the other hand required only an average amount of strength and was more or less the balancing hand, and that plaintiff could roll the drums or barrels onto the lift of the truck. The doctor considered that the thumb accounts for 50% of the function of the hand and each finger counts for approximately 121/2%, although the little finger would not be as important as the others. He indicated the absence of the one finger and some impairment of the adjacent index finger would leave a disability of the hand of approximately halfway between 121/2% and 30%. Dr. Palminticr felt that plaintiff was having some degree of pain, because of the scar on his hand, but he thought that, objectively, plaintiff should not be having as much subjective pain as he had complained of. On the basis of the objective findings, he felt plaintiff’s complaint should be minimal and thought plaintiff could return to the same job, and even though he may have some pain, he did not think the pain should be significant or severe enough to prevent him from being able to return to his work. He did not believe plaintiff had a neuroma, but that the pain was caused from the scar tissue. He stated that neuromas did have a great tendency to recur. He would approve plaintiff on a pre-employment physical basis only if the employer would accept him as he is with his disability.
Dr. Fred C. Webre, an orthopedic surgeon in • Lafayette, Louisiana, examined plaintiff on one occasion approximately one year before the trial. He noted the absence of the middle finger on the left hand, with a one and one-quarter inch long scar between the index and ring fingers, which was tender on palpation, with an extension of this scar down the palm of the hand. He found two scars on the index finger, and one scar on the thumb which was slightly sensitive to firm pressure. He found the index finger was essentially normal except for the scars and the absence of full flexion, with the index finger lacking approximately three quarters of an inch of touching the palm. He stated the plaintiff complained of tenderness in the area of the scarring, which, if caused from the scar tenderness would probably diminish with usage and passage of time, but would not diminish if there was a neuroma. He considered this possibility still remains, but thought plaintiff’s complaints were due to scar tenderness. He determined plaintiff had weakness and instability of his hand, and concluded he had a 30% impairment of the left hand. In making this estimate, he considered that the loss of the long finger would give 20% impairment of the hand, and the loss of range of motion and weakness in grip from the injury to the index finger would amount to another 10% impairment. He considered that in time the sensitivity of the scar would diminish, and with increased usage, the impairment of the hand would be reduced to approximately 25%. He felt plaintiff would have some trouble doing gross manual work, and that there would be some weakness and lack of stability in the hand, but he thought that the discomfort he was having at the time of the examination, approximately one year before the date of the deposition, should have diminished quite a bit, and he would not expect pain to be a factor in interfering with plaintiff’s working ability for doing gross manual labor. He did not feel the plaintiff would be able, because of the weakness in the hand, to lift a heavy barrel by the rim, but he felt that he could probably roll barrels in the performance of his duties.
Dr. J. Boring Montgomery, a general practitioner of Lafayette, Louisiana, examined plaintiff on February 23, 1965. In addition to the absence of the middle finger on the left hand and the scars, he noticed some numbness in the palm of the hand and there was an ankylosis or stiffening in the metacarpal phalangeal joint of the in *73 dex finger. The ankylosis was apparently caused by a traumatic injury sustained at the time plaintiff lost the middle finger. He determined plaintiff had a 75% loss of strength in his left hand as a result of the injuries received, believing that the middle finger supplied the major strength of the hand as far as gripping is concerned. He noticed plaintiff’s inability to completely flex his index finger, and felt that the loss of dexterity of his left hand would seriously affect his ability to do any type of work, particularly work described as driving a large truck and handling barrels, or handling tools, ropes, lines and machines, such as mowers and equipment of that type. He felt the plaintiff could not move or handle large drums with the left hand because the strength of that hand was seriously impaired, and to do the type of work described would be a threat to his own safety and that of others. He -found pain and sensitivity still present in plaintiff’s hand, and would not approve plaintiff on a pre-employment examination unless the employer would accept the man knowing the impairment of the hand and could accept him for work such as cleaning up, sweeping or other similar type of work. He would want the employer to be fully aware of the injury, since there would be a safety factor involved. He felt that the continued use of plaintiff’s hand for handling of large drums and heavy objects would increase the amount of discomfort plaintiff was having. He found no calluses in the left hand at the time of his examination. The numbness in plaintiff’s left hand covered approximately a square inch or so, and plaintiff’s index finger could be flexed to within approximately one-half inch of touching his palm. As to the possibility of moving heavy barrels using the strength of his right hand and guiding the barrels with his left hand, he felt that this would be somewhat awkward, and there would be a safety factor to consider.
The record shows plaintiff had worked for defendant for eleven years. In the performance of his duties, he drove a 1954 model two-ton truck with a shift on the floor. He performed common labor, occasionally fixing flats, and had other duties, but his main job was to drive to various slaughter houses and pick up barrels containing remains from slaughtered animals. The barrels were fifty-five gallon drums, and when loaded, weighed between 200 to 300 pounds. Plaintiff handled the job of loading the barrels alone, although they were unloaded by others. Most of the barrels were placed at a fairly convenient place where he could get close with the truck, although many had to be moved for some distance. He would roll the barrels onto a hydraulic gate or lift on the back of the truck, shift the gears to raise the lift to the level of the truck bed, and then push the barrels into the truck bed. Plaintiff testified that the barrels were too heavy to be picked up and were difficult to roll onto the truck, requiring the use of two hands. Plaintiff tried to return to work on two occasions before returning to Dr. Palm-intier for the operations for the removal of a neuroma. On or about August 9, 1964, he returned to work and loaded the truck at two stops by himself, but requested help in loading a last load of the day. He testified the hand was painful and he hardly slept that night. The next morning he continued to try to work but had to stop at noon, the plaintiff testifying that he could not make it because his hand was hurting him so badly. Except for these attempts to return to work, he has not worked anywhere since the injury to his hand. He testified he tried to build up his hand by working around his yard, but even to the time of the trial his hand would sometimes hurt him to a point where he had to stop. The district judge tested plaintiff’s grip by having him grasp his hand and arm, and noted for the record that the plaintiff has a rather weak grip. Plaintiff expressed pain in this test. Plaintiff indicated the location of the painful* area -was in the inside of his hand from the base of the index finger inward to the middle of the palm.
*74 , 'After carefully reviewing the record of this case, we find no manifest error in the judgment.-of the district court. Although there was-some conflict in the evidence as to the. difficulty of loading the barrels onto the lift of the truck, it is noted that even plaintiff’s boss, the manager of the plant where plaintiff wprked, testified that it took a good .man to move the loaded barrels. He testified that although, with proper skill, the barrels could usually be loaded by use of the body and one good hand, with the other used to balance, yet there were many places where, two hands were needed. This would be such instances where the barrels needed to j)e moved over unlevel or rough areas or .in soft areas as dirt. It appears to this .Court that such would be dangerous at times to the safety of a person who did not have the full .use of both hands. Inclement weather, or other unusual circumstances, would increase the danger. Under the circumstances of this case, due to the limited use which plaintiff could make of his left .hand without pain of a substantial degree,. we find he was unable to perform the duties of the -occupation in which he was injured.
It' is well settled that “whenever the worker can • show that he was wholly or partially disabled he is entitled to compensation for- the period provided in the disability provisions of the Act, even though his disability arose from one of the specific losses set 'forth in the schedule,” Malone, Louisiana' Workmen’s Compensation Law and Practice (1951),! Section 279, page 352. Our courts have consistently awarded compensation. for total disability to employees when, - through, residual injury to one or more -fingers, the employee’s loss of use of his hand, prevents him, through substantial pain or otherwise, from being able to perform the usual and customary duties of the occupation in .which he was injured. Murry v. Southern Pulpwood Insurance Company, (La.App., 3 Cir., 1961), 136 So. 2d 165;; Papillion v. Employers Liability Assurance Corp., (La.App., 3 Cir., 1962), 146 So.2d 448.
Defendant contends that the opinion of the treating physican, Dr. D. J. Palmintier, should be given the most weight, and that plaintiff failed to carry the burden of proof required by law that he was unable to perform the work he was doing at the time of the accident without experiencing substantial pain.
However, we find no significant difference in the findings of the three doctors, although there is some difference in their interpretations or opinions of plaintiff’s-ability to work in loading the barrels onto the truck. This difference of opinion appears more of a difference in their mental picture of just what was needed to “roll barrels” rather than a real difference of opinion as to the nature of plaintiff’s disability. Nor did Dr. Palmintier deny that plaintiff still experienced some degree of pain in the use of his hand for doing work. Although Dr. Palmintier and Dr. Webre did not believe pain would be a major factor in interfering with plaintiff’s work ability, yet with the opinion of Dr. Montgomery, the testimony of plaintiff and the over all evidence of this case, we do not find the district court was in error in its holding. The district court was obviously impressed with the testimony of plaintiff and believed him to be telling the truth. Plaintiff, who is 35 years of age, married, with five children, had been working regularly for the defendant for approximately-eleven years. He was a good worker. He had only gone to the first grade and has no experience for other type jobs. He apparently wanted to work and needed to work to support his family inasmuch as he made several efforts to return to work. The district court had an opportunity to view and test plaintiff’s hand, and to observe whether plaintiff experienced pain in its use. Plaintiff subjected himself to surgery on three occasions and was willing to undergo surgery again should it be pre *75 scribed, if it would help his condition. There is no dispute as to whether plaintiffs disability will have some effect on his future employment. The district court found that plaintiff was unable to perform the usual and customary duties of the occupation in which he was injured because of the disability to his hand and the pain he experienced on its use. Considering the evidence presented in the record of this case, this Court will not disturb the district court’s determination' of fact in this instance.
For the reasons assigned, the judgment of the district court is affirmed at the appellant’s costs.
Affirmed.
HOOD, J., dissents and assigns written reasons.