FRUGÉ, Judge.
This is an appeal from an award in a Workmen’s Compensation suit. Plaintiff, Simuel Guidry, was employed by defendant, Seacoast Products, Inc., primarily in the capacity of unloading vessels loaded with fish. On September 3, 1966, while he was working in a ship’s hold, a stack of fish caved in on plaintiff and, as he attempted to escape therefrom, he injured his left knee.
After this accident the defendant paid to plaintiff compensation benefits for a total of seventeen weeks. The payments were discontinued upon receipt by defendant of the second medical report indicating that plaintiff should be able to return to work.
Suit was filed on June 14, 1967, and after trial on the merits, judgment was rendered in plaintiff’s favor for one hundred weeks’ compensation, subject to credit for seventeen weeks’ compensation already paid. From this award defendants have appealed and plaintiffs have filed an answer to the appeal asking that the judgment be amended so as to increase the award and to include penalties and attorney’s fees.
There seems to be little dispute that the plaintiff was in fact injured, and that at the time of the trial he had some residual injury. The essential question to be answered is whether plaintiff is suffering from pain and discomfort from the injury which would entitle him to compensation, even though since the time of the injury he has been employed at the same work as that at the time of the accident.
The trial court gave no written reasons for his finding, but after a close reading of the record, which included both lay and medical testimony, this court is in agreement with the findings of disability of the trial court, although we think the award is insufficient.
To show the basis of this agreement with the trial court, we shall discuss only briefly some of the evidence. The medical testimony shall he discussed by dates in an effort to follow the injury chronologically.
I-THE EVIDENCE
September 3, 1966 — plaintiff was sent by his employer to Dr. Howard Alleman, a general practitioner in Abbeville, Louisiana. Dr. Alleman diagnosed plaintiff’s injury as “a contusion involving the medial, anterior and lateral aspects of the knee and considerable tenderness of those areas”. After giving plaintiff something for pain, he instructed him to return to his home, not to put any weight on the leg, and to return after three days.
September 6, 1966 — Dr. Alleman found “more swelling” and that the knee was “very tender to palpation and there was increased warmth of the entire knee”.
September 9, 1966 — Dr. Alleman found there was “effusion of the knee” and he found it necessary to “aspirate” (drain) the knee.
September 11, 1966 — Dr. Alleman found that the swelling of the knee had reaccu-mulated to a greater extent than on the previous visit, and he therefore referred plaintiff to Dr. Webre, an orthopedic surgeon in Lafayette, Louisiana.
September 12, 1966 — Dr. Webre examined plaintiff and found that he “had a sprain of the knee manifesting considerable effusion of the knee * * * He found no specific evidence of internal derangement of the knee and thought that plaintiff would be disabled from performing his normal work. Dr. Webre recommended that the patient go to a physical therapist in Abbeville, Louisiana.
October 5, 1966 — Plaintiff was again examined by Dr. Alleman who found that the swelling had disappeared, but that “there was still much pain, subjective pain, and tenderness on palpation of the medial aspect of the knee”. Two weeks later, be *572 cause of the time lapse and the continued condition of the knee, the doctor considered surgery.
October 24, 1966 — Plaintiff was returned to Dr. Webre, where it was found that he had some increase in joint fluid and that he was complaining of pain with forced flexion of the medial, as well as the posterior aspect of the knee.
November 14, 1966 — Dr. Webre found that plaintiff had a “very small amount of increased joint fluid”, and that he appeared to be gaining strength in his thigh, although still having a slight persistent limp.
November 28, 1966 — On this, the last visit to Dr. Webre, it was found that plaintiff’s limp had all but disappeared, that he seemed to have good strength clinically, and that although the patient complained of pain with forced flexion of the knee, there was no other symptomatology about the knee. For the first time, it was advised by this physician that the plaintiff return to his previous employment, but it was noted by Dr. Webre, however, that he would have some pain “upon strenuous activity.”
December 27, 1966 — Plaintiff did not return to work, and he again saw Dr. Alle-man, who upon finding that the patient’s knee had little improved, decided to refer him to another orthopedist, Dr. James H. Larrivierre, in Lafayette, Louisiana.
December 30, 1966 — Dr. Larrivierre made findings not unlike Dr. Webre’s original diagnosis, but in addition he recommended injections into the knee of Decadrone with Xylocane. According to these instructions, said injections were administered to plaintiff by Dr. Alleman on December 30, 1966, and on January 16, 1967.
January 23, 1967 — The patient was again referred to Dr. Larrivierre who still found that conservative treatment would be best, and in addition, now recommended that the plaintiff go back to work, the work being physical therapy.
February 10, 1967 — Plaintiff returned to Dr. Alleman, who although he found that plaintiff “still had some tenderness on palpation and walked with a limp”, felt that since two specialists had advised him to return to work, he had no alternative but to do likewise. Dr. Alleman testified that at this time, April 10, 1967, it was his opinion that the plaintiff was still suffering and that he expected the knee to be uncomfortable for some time to come.
After February 10, 1967, plaintiff continued to experience pain and discomfort in his left knee, but he attempted to return to work. When he returned to his former employment, fish season was not open, and instead he was assigned to cutting grass, chipping and painting around the plant. It was not before May that plaintiff was again seen by a physician.
May 9, 1967 — Dr. James Gilly, an orthopedist from Lafayette, examined plaintiff and found that he had a “so-called traumatic Pellegrini-Stieda, that is a partial tear of the upper fibres of the medial collateral ligament with calcification occurring”.
When asked about pain, Dr. Gilly noted that plaintiff was experiencing pain when he attempted to flex his knee. When walking up and down stairs or working in piles of fish and so forth, the plaintiff would encounter either discomfort or a sense of mistrust of the knee joint.
May 25, 1967 — Plaintiff was referred to yet another orthopedic surgeon, Dr. William Zink. Dr. Zink found that the patient had a normal range of extension but lacked about twenty degrees of full flexion when he compared the left knee to the right. There was tenderness over the medial portion of the left knee in its lower part and the knee seemed to contain some fluid within it. The back of the knee was swollen. Upon examination of X-Rays, Dr. Zink found “calcification adjacent to the medial aspect of the medial femoral condyle”, which he interpreted as a residual of the tear of the ligament that had *573 healed, with some little calcium deposits as a result of the healing.
Testifying in regard to pain, Dr. Zink said that plaintiff’s complaints of pain and giving way would be consistent with the cartilage injury.
When asked about future progress of the knee, the doctor noted that it would probably go on and become more severe, either in the form of an arthritis or in the, form of his knee locking.
As to the permanentness of the injury, Dr. Zink testified that considering the lapse of time since the accident, the disability which he found was of a permanent nature. This disability he described to be in the amount of fifteen percent to the knee.
Plaintiff was last examined by a physician, Dr. Gilly on August 22, 1967. He described plaintiff’s condition as follows:
“I felt at that time there was restriction of flexion of the knee of twenty five percent and probably the residual of a tear of an anterior cruciate ligament. * * * I felt as a result of the injury that the patient had sustained a permanent loss of function of the knee joint of about fifteen percent. The present loss of function, that is as existed on August 22, 1967, was about twenty five percent, but that with the passage of time estimated at about six months, the flexion movement of the knee would be normal and this would reduce the permanent impairment of function to fifteen percent.”
As to complaints of pain, Dr. Gilly noted plaintiff’s chief complaint was pain in the left knee and a giving way of the left knee. The pain was along the medial aspect of the knee and also under the knee cap when he went up and down stairs. Asked about his interpretation of these complaints, the doctor testified as follows:
“Q. Were these findings, Doctor, in your conclusions consistent with the man’s experiencing pain upon attempting to perform the work which he described to you ?
“A. Yes, I would feel that flexing the knee would be the movement that produced the pain.”
He further stated:
“Q. The tenderness or the pain which you detected upon manipulation and palpation of the knee, knowing that pain is normally thought of as subjective, did I understand you to feel that in this particular case because of the consistency of location and the nature of it it gave you some objective feeling about it?
“A. Well, the consistency of localization, yes, sir, and the complaint of pain on attempted full flexion of the knee.
“Q. In other words, you felt that that was somewhat objective—
“A. It was consistent completely with what I thought was wrong with him."
In addition to the expert testimony, just noted, plaintiff produced lay testimony which substantiated his complaints of pain and discomfort. Plaintiff himself testified and his co-workers testified, that plaintiff walked with a limp, experienced pain in his knee, and often was unable to do his share of the work, plaintiff needing help from his co-workers to keep up with his job.
In summary of the testimony, it seems that when all of the medical testimony is considered together, there is really no conflict among the physicians. Drs. Webre and Larrivierre saw the patient at an earlier date than did Drs. Zink and Gilly, and apparently there was some substantial change in the man’s condition, for the worse, thereafter. These changes were not of a purely subjective nature, but were objective findings made by competent orthopedic surgeons, namely Drs. Zink and Gilly.
The court was impressed with the fact that by the use of hypothetical questions both Drs. Webre and Larrivierre were of *574 the opinion that their findings would have been consistent with the man’s complaints of pain and discomfort in the knee as a result of a tear of the medial collateral and/or a torn medial cartilage. In general, plaintiff’s complaints were well substantiated by medical and lay testimony and the record is free of any evidence whatsoever, which would tell us that plaintiff does not have pain.
II-THE LAW
It is without doubt that a plaintiff may recover workmen’s compensation benefits even though he is in fact working at his former occupation. See Lindsey v. Continental Casualty Co., 242 La. 694, 138 So.2d 543 (1962); LaRosa v. Insurance Company of North America, 206 So.2d 135 (La.App.4th Cir., 1968); Duncan v. Carlo Ditta, Inc., 206 So.2d 140 (La.App.4th Cir., 1968); and Meche v. Employers Liability Assurance Co., 206 So.2d 152 (La.App.3d Cir., 1968). The mere fact that a plaintiff returns to work, which he is able to perform only with pain, does not defeat his right to compensation. The law does not expect and it does not contemplate that a worker, in order to make a living, should work in pain. Reed v. Calcasieu Paper Co., 233 La. 747, 98 So.2d 175 (1957), and citations therein.
In the case of Flowers v. E. M. Toussal Oil Co., 190 So.2d 147, 151 (La.App.4th Cir., 1966), our brothers of the Fourth Circuit noted the test to be applied in a situation such as we have before us here. In enunciating the test, the court used words particularly applicable to the situation at hand. This language is as follows :
“A workman is disabled and entitled to compensation under the act when, although physically able to work, he cannot do so without suffering substantial pain and discomfort. Where it is not shown that performance of the work would either be injurious to his health or increase the hazards to the health of himself and his fellow workers, in order to constitute disability the pain must he sufficiently intense as to prevent the worker from carrying out his fob or some of the functions thereof', and the question of whether a claimant is unable to work without pain sufficiently severe as to be considered disabling is one of fact.” (Citations omitted.) (Emphasis added.)
See also Glidden v. Alexandria Concrete Co., 242 La. 626, 137 So.2d 894 (1962); Roberie v. Ashy Construction Co., 215 So.2d 857 (La.App.3d Cir., 1967); Vidrine v. United States Fidelity and Guaranty Company, 205 So.2d 178 (La.App.3d Cir., 1967) ; and Moreau v. Employers Liability Assurance Corporation, 180 So.2d 835 (La.App.3d Cir., 1965).
The evidence reveals that although the plaintiff has returned to work, upon exertion he suffers substantial pain and discomfort and that this is a residual of the injury sustained. Under the law cited above, it is the opinion of this court that plaintiff does have pain sufficiently severe so as to disable him from carrying out “some functions of his job”. As we noted in the testimony, plaintiff is a common laborer, who, during the last fish seasons has been employed as an “unloader” in a menhaden plant. Said duty would, of course, involve his climbing in and out of ships and barges by the use of ladders, and remaining on his feet for many hours of the day. In fact, almost any job available to a common laborer such as plaintiff, would involve movements of the kriee, which would, according to the testimony of the experts in this case, produce pain in a situation such as that of plaintiff’s.
As to the amount of pain encountered, the long standing suffering of plaintiff, with little or no improvement, attest to the fact that plaintiff’s suffering and discom *575 fort are of a substantial amount, well over the amount necessary to award this man the compensation he was given by the trial court.
In the absence of any competent evidence that this particular claimant will indeed be able to ever work without the pain, discomfort and mistrust of his knee that he suffers, this court finds that the proper determination is that plaintiff is totally and permanently disabled and that he should be paid benefits for the maximum period of four hundred weeks with credit being given to defendant as was given by the trial court in its judgment.
If at any time six months after the rendition of this judgment, the defendant can prove that plaintiff is no longer disabled from performing his full work duties without substantial pain and suffering, the defendant has the full right to have the judgment reviewed. L.S.A.—R.S. 23:1331.
After a close reading of the record, the claim of plaintiff-appellee for penalties and attorney's fees is found not well based.
For the foregoing reasons it is the ruling of this court that the judgment of the lower court be amended, and that as amended, judgment is rendered in favor of plaintiff, Simuel Guidry, and against the defendants, Seacoast Products, Inc., et al, in solido, condemning them to pay plaintiff the sum of Thirty-Five ($35.00) Dollars per week for a period not to exceed four hundred (400) weeks, together with interest at the rate of five percent (5%) per annum from maturity of each such weekly payment from its due date, until paid, together with medical expenses, and subject to a credit for seventeen weeks’ compensation already paid, and any medical expenses paid. As amended the judgment of the lower court is affirmed. Cost to be paid by defendant-appellants.
Amended and affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.