BARNETTE, Judge.
The plaintiff brought suit for recovery of workmen’s compensation. She alleged total permanent disability and sought recovery of maximum compensation. From a judgment rejecting her demands and dismissing her suit, the plaintiff has appealed. She concedes in this court her failure to prove total permanent disability and now seeks recovery of such compensation as would be just and equitable for her alleged partial disability, citing LSA-C.C P. art. 862 and LSA-R.S. 23:1317.
The plaintiff, Irene Sholes, prior to November 12, 1967, the date of the alleged injury, had been employed as a cook or baker off and on since 1957. She had worked for different employers in such capacity, but at the time of the accident in question was not so employed. During the football season of 1967 she was employed in part-time janitorial work engaged in cleaning the Tulane Stadium after football games. In this capacity she was employed by Gulf Janitorial Service, Inc., sometimes referred to as Gulf Building Service, at an hourly wage of $1.50. Prior to November 12, 1967, she had worked in that capacity “four or five times” or more. According to the testimony in the record before us she had no other employment during the time in question.
On November 12, 1967, while working with a janitorial crew cleaning the stadium following a New Orleans Saints football game, the plaintiff fell injuring the middle finger of her right hand. The accident was reported immediately, and on November 14 she was sent by her employer to Dr. James E. Brown for treatment. Dr. Brown’s examination on that date revealed a “fusiform swelling of the proximal interphalangeal joint of the right long finger.” Fusiform was explained as meaning shaped like an hourglass. He made a diagnosis of capsu-litis and placed plaintiff on medications. He also had X rays made. She was seen and treated again by Dr. Brown on December 6, December 13, December 20, December 29, 1967, and finally on January 5, 1968, at which time she was discharged.
During this period plaintiff was paid compensation but there is a disagreement as to the amount paid. The plaintiff said she received three checks of $21 each. This testimony was given from memory and not from any record of payments kept by her. The representative of the claims department of Travelers Insurance Company, Gulf Service’s compensation insurer, said payments of compensation at the rate of $23.40 per week were made on December 4, 8, 15, 26, and 29 and that one of the checks was for $46.80, making a total of $140.40, plus a drug *83 bill paid on December 7. It was established that her hourly wage was $1.50 and averaged $6 per day. On the basis of six days to a week this would be $36, of which 65 percent is $23.40. We are convinced therefore that she was paid that amount, as the adjuster testified, rather than $21 as she remembered, and that the total amount paid was $140.40, representing six weeks’ compensation.
The plaintiff went to work at Loyola University as a cook “in February”; the exact date was not stated. She worked continuously in that job until October, 1968, substituting for a regular employee then on maternity leave. She then went to work at Tulane University as a cook and was working in that capacity up to the date of trial of the case below, May 28, 1969. She was then to be out of work until August, we assume because of the summer vacation at Tulane.
The plaintiff did not say so, but it may fairly be assumed that she did no more janitorial work at the stadium after November 12. We may assume also that there were no football games in the stadium after January 1, 1968. During this period she was paid six weeks’ compensation.
There is no evidence, therefore, that plaintiff has lost any employment for which she was not compensated as a result of the injury sustained on November 12, 1967.
The plaintiff’s contention in this court is that the trial judge was in error in dismissing her suit merely because she failed to prove total and permanent disability as alleged. She contends that he should have considered her partial disability and should have awarded compensation accordingly. She further contends in this court that the two medical experts who testified for defendants failed to give consideration to the X-ray reports which they ordered and consequently their expert opinions given in court were not based on full and correct information available to them.
Dr. Vernon Knoll testified on behalf of the plaintiff. He examined her on three occasions: February 14, 1968; September 26, 1968; and May 21, 1969. His first examination revealed a swelling such as described by Dr. Brown. Dr. Knoll testified: “The X-ray showed soft tissue swelling in the region of the proximal interphalangeal joint in an area where there seemed to be some cortical erosion in this area.” Referring to his examination of September 26, 1968, he said X rays revealed the erosion was cleared, which indicated it was not a pre-existent condition and was caused by the injury. He felt there was a disruption of the bony substance in the phalanx. He rated her disability as 20 percent of the finger, which amounts to a 3-percent disability of the hand.[1] There was still soft tissue swelling but he said, “The bone changes had disappeared that were present on the first examination.”
Dr. Knoll testified that on his last examination, May 21, 1969 (just before trial below):
“I found that she could use the fingers fairly well, but could not knead or push with the knuckles as she stated she was required to do in the making of doughnuts and kneading of bread and so forth, this produced pain. Inspection of the hand again revealed the enlarged area at the proximal interphalangeal joint of the long finger of the right hand. Pressure on either side of this joint produced pain. There was a good range of flexion and extension, but she complained of pain upon forced flexion at the extreme degree. X-rays were taken again as of this date.

X-rays again showed soft tissue swelling about the proximal interphalangeal joint, but no significant bony abnormalities.”
*84 He was of the opinion that plaintiff had a disability, but that it had decreased to some extent. He still held to the 3-percent disability of the hand. He said there was some interference with the function of the hand which required a grasp or complete flexion of her fingers. He thought she had some cartilage damage' which will not show up on X ray. He felt that any prolonged use of the hand which required grasping or manipulation of the injured finger would cause pain, but that she was not totally disabled; that she could perform her accustomed tasks, but not with the same degree of efficiency as before.
In addition to Dr. Brown, who is a general surgeon, Dr. Hyman R. Soboloff, an orthopedic specialist, testified on behalf of defendants. Dr. Soboloff testified that there was some slight swelling or thickening noted around the finger, but no loss of function was noted. There was a normal range of motion. He found no functional disability.
There is no substantial conflict of opinion among the three medical experts who testified. They agree that the plaintiff’s injury resulted in a capsulitis, which is an inflammatory condition of the tissues surrounding the injured joint and that there was a residual manifested by a swelling or enlargement of the joint area. They were in agreement that a full range of motion exists and that there is no reason why plaintiff cannot continue her employment as a cook and perform all the functions incidental to such employment, including some kneading of dough, sweeping, and other duties requiring the use of knuckles and hand grasp. They are in agreement that “prolonged” use of the hand in such work could cause some degree of pain. They are in some disagreement as to the degree of pain which was referred to as “pain,” “mild pain,” and “discomfort.”
It would serve no useful purpose to discuss the testimony of the medical experts in greater detail. We are convinced from their testimony that the plaintiff is not disabled from performing the duties of her employment. The only question is the degree of the pain or discomfort caused by the prolonged use of plaintiff’s hand in the performance of her duties.
There is abundant authority in our jurisprudence that a workman will not be deprived of compensation when, although he is able to continue the tasks of his employment, if to do so would subject him to substantial pain and discomfort or endanger his health or safety or that of other employees. The application of the principle must and does have its limitations. The Supreme Court in Glidden v. Alexandria Concrete Company, 242 La. 625, 137 So.2d 894 (1962), applied aiimitation of the principle and said at p. 897:
“It would be illogical, however, to treat this doctrine as encompassing all degrees of discomfort and make a complete or ‘good-as-new’ recovery essential before an. employer may stop compensation payments. The pain must be substantial enough to be disabling in that it either prevents the worker from carrying out some of the functions of his job or, where the pain is not so intense as to hinder the worker’s fulfillment of his duties, it must be. shown that performance of the work would be deleterious to his health. This would be the case where going back to work was possible but doing the work might retard the worker in regaining complete recovery of his health.”
To allow compensation in this case would be an extension of the principles quite beyond the limits set forth by the Supreme Court in that case.
For further illustrations of the limitation of the application of the working-in-pain rule, see Lantier v. Guy Scroggins, Inc., 223 So.2d 252 (La.App. 3d Cir. 1969) ; Tyler v. American Mutual Liability Ins. Co., 212 So.2d 437 (La.App. 2d Cir. 1968); Vidrine v. United States Fidelity & Guaranty Co., 205 So.2d 178 (La.App. 3d Cir. 1967); Flowers v. E. M. Toussel Oil Co., 190 So. *85 2d 147 (La.App. 4th Cir. 1966); Taylor v. Meeker Sugar Cooperative, Inc., 177 So.2d 140 (La.App. 3d Cir. 1965); Beaugez v. Liberty Mutual Insurance Co., 173 So.2d 869 (La.App. 4th Cir. 1965).
For the foregoing reasons the judgment dismissing plaintiff’s suit at her cost is affirmed.
Affirmed.

. This percentage of disability of the hand is determined on the basis that the long finger of the hand accounts for 16 percent of the hand function. Therefore a 20-percent disability of the finger is approximately 3 percent of the hand.