REGAN, Judge.
The plaintiff, Perley Hilbert, filed this suit against his employer, the defendant, Quinn Construction Company, Inc., and Continental Insurance Company, Quinn’s insurer, for the sum of $24,500.00 representing workmen’s compensation to which he asserts he is entitled to for an injury incurred by him in the course of his employment.
The defendants answered and explained that they paid plaintiff $2,452.00 an amount in excess of the statutory allowance for the type of injury suffered by the plaintiff, and denied further liability to him.
Following a trial on the merits, the lower court rendered judgment in favor of the plaintiff and against the defendants, in so-lido, awarding plaintiff compensation for total and permanent disability at the rate of $49.00 per week for a period not to exceed 500 weeks.
From that judgment the defendants have prosecuted this appeal.
The record discloses that the plaintiff was employed by the defendant as a common laborer in connection with the renovation of the old DeSoto Hotel, in New Orleans. In the course of this work he was engaged in transporting 2 x 4" pieces of lumber in an elevator when one of these pieces somehow became jammed therein and struck him on his left knee. The evidence adduced herein reveals that from the date of the accident to the time of the trial in the lower court the plaintiff was able to work for only one and one-half days.
He was initially examined by Dr. G. Gernon Brown, and then by Dr. Irving Re-dler. Dr. Redler diagnosed the plaintiff’s condition as a torn or ruptured left medial meniscus, and after appropriate treatment performed an operation for its removal.
The only other physicians with whom the plaintiff visited for any period of time were Doctors Houston, Roy and Faust, who treated him immediately after the accident.
The principal complaint urged by the defendant is that the lower court erred in ig *878 noring the statements of the plaintiff’s physicians that he was able to return to heavy work as a common laborer. However, after reading the testimony offered by the plaintiff’s physicians, there is no doubt that the plaintiff was effectively deprived of the ability to perform common, heavy labor as a result of his injury, and that he will never be able in the future to return to this type of work.
The defendants predicate their argument for reversal of the judgment rendered by the lower court primarily on one answer given by Dr. Redler, to the effect that he thought that the plaintiff should and could return to work. This statement, which emanated from cross-examination, is not truly reflective of the testimony offered on direct examination by Dr. Redler. He related that after the surgical removal of the medial meniscus, the plaintiff encountered difficulties with his left knee. Some time later he advised the plaintiff to return to work and after working approximately one and one-half days, he returned to him with an exacerbation of symptomatology in his left knee. He then advised the plaintiff to obtain complete bed rest for three weeks, and thereafter his symptomatology subsided. However, as to whether or not the plaintiff could return to work, Dr. Redler was emphatic when he stated on several occasions that it was his policy in connection with knee injuries to advise patients to return to work in an effort to ascertain if they were capable of resuming their former employment. He said that he further cautioned them to return to him in the event that symptoms again recurred. In this case, it is clear that after a day and a half of work, the plaintiff’s symptoms did in fact recur and he was required to engage in bed rest for three weeks thereafter.
This interpretation of Dr. Redler’s testimony is substantiated by the testimony of Dr. Jack Wickstrom, who examined the plaintiff on one occasion prior to the trial in order to offer an expert opinion with respect to his condition. Dr. Wickstrom, an expert in orthopedics, as is Dr. Redler, related that he found symptomatology in the plaintiff’s left knee consistent with a torn or ruptured medial meniscus. While Dr. Redler assessed the plaintiff’s disability as 10% of the left knee, Dr. Wickstrom estimated his disability to be between 15 and 20%. He significantly testified that he recommended that the plaintiff endeav- or to obtain some other type of employment which did not require climbing of stairs or ladders or kneeling, since these activities aggravated the plaintiff’s condition.
It is axiomatic that under the Louisiana Workmen’s Compensation Statute and the jurisprudence interpretative thereof that an injured worker need not return to work, and is deemed to be disabled, when to do so would endanger his own health and safety and when he would be required to work in pain.[1]
The foregoing elucidation discloses that the only significant question posed for the trial court’s consideration was one of fact, and that was whether the plaintiff was able to resume the same occupation which he was engaged in at the time he was injured.
After hearing all of the evidence adduced herein, both medical and lay, the trial court resolved any conflict in the evidence in favor of the plaintiff, and concluded that he had been totally and permanently disabled as the result of the rupture and subsequent removal of his left medial meniscus.
We have evaluated the evidence contained in the record and we have been unable to discover any manifest error in the *879 trial court’s conclusion and therefore the judgment must be affirmed.
For the foregoing reasons, the judgment appealed from is affirmed. The defendants are to pay all costs incurred herein.
Affirmed.

. See Curtis v. The Texas & Pacific Motor Transport Co., 260 So.2d 28 (La.App.1972); Sholes v. Gulf Building Service, 234 So.2d 81 (La.App.1970); Carlock v. Gross, 167 So.2d 464 (La.App.1964).