CULPEPPER, Judge.
The defendant employer appeals from a judgment awarding plaintiff employee workmen’s compensation benefits for total and permanent disability.
The sole issue is whether plaintiff was disabled beyond the date on which workmen’s compensation payments were terminated.
The facts are that plaintiff is a 57 year old negro male, who completed only the fourth grade of school and has worked most of his life as a farm laborer. At the time of the accident on December 19, 1970, he was employed by defendants on their farm. His duties consisted principally of working the cattle, feeding horses, harvesting hay and keeping the grounds clean. While performing these duties, he was kicked by a horse, sustaining a simple fracture of the middle third of the tibia of his left leg.
On the date of the accident, plaintiff was taken to a hospital in Opelousas where he was seen by Dr. Robert Luke Bordelon, an orthopedic surgeon of that city. A closed reduction was performed and a long leg cast applied. Recovery was normal. Plaintiff was released from the hospital on December 22, 1970. The cast was removed *837 on June 17, 1971. For about another month he used crutches. Plaintiff remained under Dr. Bordelon’s care until March 2, 1972, at which time he was discharged as being able to return to the work he was performing at the time of the accident.
Workmen’s compensation payments were terminated on March 16, 1972. Plaintiff filed this suit on June 30, 1972.
At the trial, Dr. Bordelon, who is the treating physician and a specialist in orthopedic surgery, testified that when he discharged plaintiff on March 2, 1972, the fracture site was healed and stable, there was full range of motion of the knee and ankle, good muscle tone and circulation, and a small amount of atrophy of the left thigh. However, due to the normal scar tissue at the fracture site, it was Dr. Bor-delon’s opinion that plaintiff would probably have some discomfort on standing for long periods of time. On the basis of this discomfort, Dr. Bordelon estimated 6% physical impairment of the left leg on a permanent basis. He summarized his testimony as follows:
“Q. And the six (6%) per cent physical impairment, including the pain factor, would not, in your opinion, prevent him from returning to his former occupation and in doing and performing his usual and customary duties, is that correct ?
“A. Correct.
“Q. You feel that he had a good recovery, sir?
“A. Yes sir.
"Q. Do you feel that he is as able now to perform activities commensurate with his age and previous occupation as he was before?
“A. Correct.”
Dr. Bordelon saw plaintiff again on September 28, 1972, which was approximately three weeks before the trial, and he was still of the opinion that he could return to work.
At the request of the defendant insurer, plaintiff was examined on May 17, 1972 by Dr. William Louis Meuleman, an orthopedic surgeon of Lafayette. This physician found an excellent union of the bone at the fracture site, full range of motion in the knee and ankle, no swelling, and a small amount of atrophy in the left thigh. Dr. Meuleman thought that plaintiff exaggerated his complaints of limping and pain. He concluded plaintiff had 5% permanent disability of the left leg. His testimony is summarized as follows:
“Q. Do you feel that the disability that you accorded him of five percent in any way would prevent him from performing activities commensurate with his age and his previous occupation ?
“A. No, I don’t believe it would.
“Q. Do you feel that he could return to his former activities without anything but this five percent residual?
“A. Quite frankly, yes, and I think he was somewhat overdue just in time alone. He should have been back to work before this.”
Plaintiff testified that after compensation payments were terminated, he tried to work but could not because he experienced pain, discomfort and swelling after standing on his feet for long periods of time. About three months prior to the trial, plaintiff began working occasionally for Mr. Bruce Young, a tree surgeon. His duties were to load branches on the truck, take care of the saws and do general •clean-up work. But he says that after working all morning, he would begin to have pain and discomfort in his left leg. Mr. Young corroborated plaintiff to an extent, i. e., he said that plaintiff complained in the afternoons that his leg had “given out”.
*838 The legal issue is whether plaintiff is permanently and totally disabled to do work of any reasonable character within the meaning of LSA-R.S. 23:1221(2). Our jurisprudence is established that even though a common laborer is not completely incapacitated, he is considered totally and permanently disabled within the meaning of the statute if he is no longer able to compete with able bodied workers in the flexible common labor market, Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138 (1964) and the authorities cited therein. As regards disabling pain in particular, the rule is that an employee is not required to work in substantial pain, Chapman v. Travelers Insurance Company, 250 So.2d 248 (La.App.3rd Cir. 1971). However, the pain experienced must be substantial, i. e., it must be more than trivial or minor, Lavergne v. Southern Farm Bureau Casualty Insurance Company, 171 So.2d 751 (La.App.3rd Cir. 1965).
In the present case, both doctors expressed the opinion that plaintiff would experience some pain and discomfort on standing for long periods of time. However, these physicians were of the opinion that the pain and discomfort would not be sufficiently substantial to disable plaintiff from returning to the work which he was performing at the time of the accident. They could find no objective basis for plaintiff’s subjective complaints of substantial pain. The opinions of these experts seem logical. Plaintiff suffered a simple fracture of the tibia of the left leg, which healed without any unusual or abnormal residual.
This case falls within the rule of Guidry v. Tweedel, 254 So.2d 685 (La.App.3rd Cir.1971), where plaintiff suffered fractures of the tibia and fibula. He had 10 to 15% residual impairment of the leg. We held this did not render him permanently and totally disabled to perform the work of a carpenter’s helper.
Also applicable here is D’Avy v. Bituminous Casualty Company, 255 So.2d 645 (La.App.3rd Cir. 1971) where a bricklayer suffered a tear of the medial meniscus of the knee. Following surgery he had a residual 15% permanent partial loss of use of the function of his leg. We held he could return to work as a bricklayer without suffering substantial pain, and that he was not permanently and totally disabled.
See also the case of Sallinger v. Sachse Electric Company, 255 So.2d 159 (La.App. 1st Cir. 1971) where an electrical worker suffered 15% permanent partial disability of his left leg. The court held he was not permanently and totally disabled.
The most recent case from our Supreme Court is Futrell v. Hartford Accident & Indemnity Company, La., 276 So.2d 271 (1973), in which an automobile mechanic suffered a tear of the medial meniscus of the right knee. The meniscus was surgically removed. There was a conflict in the medical as to whether plaintiff could return to work. At least one doctor recommended further surgery. But the court found a preponderance of the medical testimony showed 10% permanent disability of the right leg, due to pain and a restriction of the ability to squat, lift heavy items or climb. In a 4 to 3 decision our Supreme Court held that plaintiff was permanently and totally disabled. Essentially, the majority held that Futrell’s ability to compete with other able bodied mechanics in the general labor market was substantially decreased. The dissenting justices thought the expert medical testimony showed plaintiff could return to his former occupation, which was a “line mechanic” in a modern automotive repair shop with equipment which did not require squatting or climbing. On this basis they found Futrell was not permanently and totally disabled within the meaning of our Workmen’s Compensation Act.
Clearly, the residual disability in Futrell was greater than that in the present case. Futrell sustained a 10% permanent disability of the right knee, which reduced his ability to squat, climb and perform other *839 physical functions requiring the use of the knee. The plaintiff in the present case sustained only a 5 or 6% disability of the left leg, and this is not based on any loss of motion but on minor pain and discomfort which will be suffered after standing for long periods of time. Even using the test which is stressed by the majority in Futrell, we conclude that plaintiff in the present case will not be substantially disadvantaged in securing work in the common labor market. The medical testimony in the present case is not in conflict, as it was in Futrell. Here, both physicians are of the opinion that plaintiff can return to the common labor market. And the evidence shows that at the time of the trial, plaintiff had actually returned to such work.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant, dismissing plaintiff’s suit at his cost. All costs of this appeal are assessed against the plaintiff appellee.
Reversed and rendered.