DOMENGEAUX, Judge.
This is a workmen’s compensation suit by the plaintiff for permanent and total disability benefits allegedly due by reason of an accidental injury sustained during *813 the course and scope of his employment with the defendant construction company on September 24, 1970. After a trial on the merits judgment was rendered in favor of the defendant-company and its insurer. Plaintiff prosecuted this appeal from that judgment.
The facts are that on the aforementioned date plaintiff was employed as a common laborer for Boh Brothers Construction Company in St. Martin Parish. Specifically, the company was engaged in the construction of Interstate Highway 10 in the Henderson, Louisiana, area. The accident occurred when a bulldozer pulled an H-beam over plaintiff’s left leg causing a severe injury to the left ankle.
Plaintiff was immediately taken to Gary Memorial Hospital in Breaux Bridge, Louisiana, where he was examined and treated by Dr. Ernest M. Yongue, a general practitioner and surgeon. The initial examination and x-rays indicated that plaintiff had sustained very severe fractures of the ankle in several places in addition to having a dislocation thereof. The following day reduction and fixation surgery was performed on the ankle which included the insertion of two screws to correct bone displacement. Plaintiff was subsequently hospitalized for thirteen days and remained in a cast for approximately six weeks. Thereafter he continued under the care and treatment of Doctor Yongue until his release on June 25, 1971.
On September 17, 1971, Sanders was examined by an Opelousas orthopaedist, Doctor Ladislas Lazaro, III, who' noted in regard to the left ankle (1) that plaintiff favored same when walking; (2) that it was approximately inch larger than the right ankle; (3) limitation of motion; (4) medial laxity caused by a loose ligament inside the ankle; and finally (5) a “clicking” sound and “narrowing” in the joint space. Thereafter on November 3, 1971, the doctor surgically removed the fixation screws which had been originally inserted in plaintiff’s ankle. The plaintiff was subsequently discharged on November 26th.
Thereafter plaintiff was examined by two orthopaedic surgeons, Dr. J. W. Am-brister of Lake Charles on January 26, 1972, and Dr. Fred C. Webre of Lafayette on July 24, 1972.
Doctor Ambrister found (1) plaintiff could walk without a noticeable limp; (2) the left ankle was visibly enlarged' with a limited range of motion; (3) x-rays revealed some instability (play from side to side) in the ankle joint; (4) pulses at the ankle region were palpable upon touch; and (5) minimal crepitus (grating of the joint) was present.
Doctor Webre, upon examination, found (1) that plaintiff walked without an apparent limp; (2) no widening of the ankle; (3) narrowing of the joint space; (4) 15% limitation in dorsiflexion of the foot; and (5) no evidence of instability in the ankle joint.
Workmen’s compensation benefits at the rate of $49.00 per week, in addition to medical expenses, (in the amount of $1,934.31) were paid the plaintiff by Travelers Insurance Co. from the date of his accident until August 11, 1972 (approximately 100 weeks). At the latter date benefits were terminated on the basis of a written report received by the insurer from Doctor Webre on August 10, 1972, to the effect that plaintiff could return to work in his previous employment without suffering substantial pain or discomfort.
Plaintiff subsequently filed this suit on September 26, 1972, for recovery of total and permanent disability benefits, medical expenses, and penalties and attorney’s fees.
The case was tried on December 7, 1972, and a judgment later rendered in defendant’s favor. The trial judge ruled in effect that plaintiff’s injuries did hot render him totally and permanently disabled under the Workmen’s Compensation Act. He found that plaintiff’s residual pain was only *814 “mild and occasional” and that the loss or restriction in regard to plaintiff’s ankle, occasioned as a result of the injury, did not substantially handicap him in the common labor market.
The only issue before this court is whether the plaintiff is permanently and totally disabled to do work of any “reasonable character” within the meaning of the Workmen’s Compensation Act (LSA R.S. 23:1221(2)).
I'n this regard we must first turn our attention to the medical testimony presented at trial (which with the exception of Doctor Lazaro was taken by deposition).
As aforementioned, plaintiff’s initial treating physician, Dr. E. M. Yongue, last saw the plaintiff on June 25, 1971. At this point in time he evaluated plaintiff’s permanent disability to be 20% (T.24), due to limitation- of motion in the left ankle, (T. 25), the severe separation and tearing of the ligaments, (T.34), in addition to the fact that plaintiff would be restricted in its use because of fatigue and pain encountered after prolonged standing (T.33). The doctor also stated the following in regard to the disability.
“A. Well, I think that any type of job which would require the use of that ankle would be more disabling than a job that would not require it. In other words, if he had to stand on real hard surfaces and do a lot of straining on it, it would most probably be a greater disability than a person who could walk on a softer floor and be able to sit down every now and then.” (T.24 — 5)
Doctor Yongue further indicated that walking over uneven ground and prolonged standing would cause the plaintiff difficulty (T.25).
On the question of the degree of pain the plaintiff would expect to experience, the doctor stated that he felt the plaintiff could return to his work but not without suffering “substantial pain or discomfort” to the ankle (T.27). He reiterated his position further in his testimony by indicating he would expect a man who had an injury as severe as that of plaintiff’s to have “significant residual pain” (T.36). The doctor further indicated that any type of laboring job would cause the plaintiff discomfort in ’the ankle but that the type of work he was doing at the time, i. e. walking on uneven ground and things of that nature, would make his discomfort greater (T.31-2). He indicated plaintiff might even have serious difficulty in driving a large truck (T.32). The doctor, however, at other points in his deposition used language such as “some pain”; “his ankle is going to hurt him some” (T.27) ; “possibly some aching” upon prolonged standing (T. 25) in describing plaintiff’s pain factor.
Doctor Yongue also stated clearly that he thought plaintiff would be handicapped (as compared to a person who had not had this injury) in performing common labor (T.26). He based this opinion on the fact that the disability in the ankle and resulting discomfort might be periodically severe enough to prevent Sanders from attending his work regularly as he should and that as a result he might encounter a problem retaining employment (T.30).
In addition the doctor indicated that a person with a severely dislocated ankle, such as plaintiff’s, was more likely to have future arthritic trouble than one who had not sustained such an injury (T.37-8).
Dr. Ladislas Lazaro, III, also stated that plaintiff could return to his former work as a common laborer (or at least certain jobs listed by defendants’ counsel) but stated that the ankle joint would have some symptomatology with doing the work (T. 173-4). He classified plaintiff’s injury as a “very severe fracture” (T.166). He explicitly stated however that he would not like to see the plaintiff attempt doing work at heights on a slim platform (T.175). The reason for such a preclusion was the fact that plaintiff’s ankle had a tendency to give way thereby putting the plaintiff in *815 a hazardous position (T.182). The doctor indicated that this giving way was very probable in the future, (T.182), and that it was likely such would occur several times a day merely when the plaintiff put his foot down on an unlevel surface as plowed ground (T.186). In summary, he stated he felt plaintiff was employable but that he had certain limitations on his ankle revolving around the fact that it was not completely trustworthy (T.187-8).
The doctor also was of the opinion that plaintiff would have a 20% permanent physical impairment of the function of the ankle joint as a whole (T.167). The doctor explained the mechanics of the disability as loss of the joint surface (T.163), resulting instability in the ankle joint, limitation of motion (T.166, 169) and a mild to moderate degree of arthritis (T.181), with an expectation of progressive arthritis (T. 169).
On the question of pain, the doctor described the amount Sanders could expect after a day on his feet as “moderate” (T. 182) ; “an ache or discomfort with performing these things” (T.182); “he would have pain but he could do it”; “he would not have severe, exruciating pain that would just require him to absolutely stop”; “during his work period he would feel discomfort and pain in the ankle” (T.184).
Doctor Lazaro also was of the opinion that the plaintiff would be definitely handicapped (although not substantially, with the exception of “beam walking”) in comparison to a laborer who had not sustained an injury in performing functions demanding speed, agility, or any kind of quickness or motion on his feet (T.174). This was based mainly on the likelihood of plaintiff’s ankle “giving way” (T.182, 185-6). The doctor also indicated plaintiff would have difficulty walking over wooded terrain or unlevel or plowed ground (T.186).
Dr. Jerome W. Ambrister also was of the opinion that plaintiff could return to his previous type employment (T.52) but with a 15% permanent disability referrable to the left foot (T.51). In his opinion plaintiff had a 50% limitation of the left ankle as compared to the right (T.52). He stated that plaintiff’s ankle joint had widened and displaced leaving an excess amount of space for the ankle to move and causing instability of the ankle joint (T. 48) which would have accounted for plaintiff’s complaints that his ankle slid from side to side (T.54). It was also his opinion that this abnormal amount of motion would likely result in the development of traumatic arthritis (T.57, 64-5).
On the amount of pain plaintiff might expect, the doctor indicated at one point that it would be reasonable to expect prolonged standing or moving about to cause “substantial pain and swelling” in Sanders’ ankle by the end of the day. He also stated while the ankle could get better, it might also get worse (T.54). Later, however, he indicated pain would be of a mild degree (T.59-61).
In assessing plaintiff’s ability to work and possible handicap in competing against able-bodied workers, the doctor indicated Sanders would experience pain in walking over uneven terrain, would have difficulty squatting with the limited motion of the ankle (T.55-6), and would be less agile than someone without the injury (T.61-2). He did, however, state that the plaintiff might be able to compensate or substitute certain movements or positions that would not cause him as much pain if he was not working in close quarters (T.55-6).
The last doctor to examine the plaintiff was Dr. Fred C. Webre, whose testimony in parts is in variance with the other physicians. As aforementioned, upon initial examination he found no widening of the left ankle and no evidence of instability in the ankle joint (T.116-17).
He did, however, evaluate the plaintiff’s disability at 20% impairment of the ankle due to limitation of motion, ankle irregularity at the joint, and narrowing of the joint space at the ankle (T.118).
*816 The doctor did indicate that plaintiff could return to his former duties without suffering a substantial amount of pain or discomfort (T.119) but would instead experience more of an aching type of pain (T.120) which would be increased initially on a return to work and should improve with passage of time (T.l 19-20).
Doctor Webre did however admit that if put in competition with other workers performing manual labor, which involved mobility and agility or running, the plaintiff would be at a disadvantage over and against a person without the injury (T. 126). He did not agree with Doctor Lazaro’s findings in regard to the fact that plaintiff should not engage in “beam walking”. He stated that plaintiff could walk on steel beams carrying things but indicated he would be handicapped (although not substantially — (T.130) to the extent that he might have some ache upon doing the activities the entire day (T.126, 9).
He also expected the plaintiff to develop arthritic changes in his left ankle (T.128).
The plaintiff also testified on his own behalf stating that he had worked all of his life as a common laborer. At the time of his accident he testified that the majority of his duties with the defendant — construction company involved “beam walking”, some 100 feet over water on the elevated I — 10 structure, carrying various loads and handling scaffolds. Plaintiff was also required to “cut raw concrete” which involved the arduous task of spreading concrete with a shovel while walking and standing on steel reinforced rods. On the ground the plaintiff cleaned and piled up trash on the right of way, constantly walking over uneven terrain.
Prior thereto plaintiff indicated he had worked at various jobs in the common labor field including operating a fork lift, clean up work, digging, and other jobs (requiring no elevated work). For the past several years, however, the plaintiff states that he has worked on building portions of the elevated stretches of I — 10 in the Henderson area and in Baton Rouge and that he did so in order that he could earn more an hour by climbing and “beam walking”. He further indicated were it not for his ability to “beam walk” and work at heights doing heavy labor he would not have been able to work as continuously as he did prior to his injury. This job required many miles of walking during a 12-hour day (T.88).
After the accident the plaintiff explained he has not returned to his former job because of swelling and pain in the ankle. Sanders further testified that he experienced a “giving way” or laxity in his ankle on a number of occasions in ordinary walking around his house (T.100, 206) ; that the ankle failed him if he put pressure on the leg (T.9S) ; that after a few hours on his feet swelling would occur in the ankle region with resulting pain; that the pain was often severe enough to cause him to have to sit down and soak his ankle (T. 96-7).
Plaintiff's wife also testified to the effect that her husband had always been a good provider, often working 7 days a week. She stated prior to this time the family had never been on unemployment or welfare. Mrs. Sanders also corroborated plaintiff’s statements in regard to his ankle “giving way” and swelling when he walked on it (T.24S-6).
It is well established in our jurisprudence that a common laborer, even though not completely incapacitated, will be considered totally and permanently disabled within the meaning of the Act if he is no longer able to compete with able-bodied workers in the flexible common labor market. Ball v. American Marine Corporation, 245 La. 515, 159 So.2d 138 (1963); Simien v. Haas-Hirsch Estate, 278 So.2d 836 (La.App. 3rd Cir. 1973).
Likewise, the law does not expect or require an employee to work when to do so would cause him substantial pain or would be deleterious to his health. Glid- *817 den v. Alexandria Concrete Co., 242 La. 625, 137 So.2d 894 (1962); Perkins v. Southern Casualty Insurance Co., 262 So.2d 791 (La.App. 3rd Cir. 1972).
From a review of the foregoing medical evidence, together with plaintiff’s testimony of pain and instability in his ankle, we are convinced plaintiff’s disability is of such a character as to render Sanders substantially handicapped in competing with able-bodied workers in the common labor market.
As we noted in the testimony, plaintiff is a common laborer (with only an 8th grade education), who has been employed in the construction industry for the past number of years. According to his uncontradicted testimony, most of his labor in these jobs has involved climbing and work on high beams, scaffolds, and elevated walkways. This of course by its very nature necessitates people who have strong ankles and are able to keep a firm footing. We opine the plaintiff is unable to perform these duties without endangering his health or life.[1]
In addition, almost any other job available to the common laborer would necessarily involve ankle movement. In fact, in the common labor market we would not be speculating to say that most jobs available are as the job title indicates, “common labor”, usually over rough terrain and requiring one to remain on his feet for the great majority of the hours in a day. We opine plaintiff could not perform many tasks required of common laborers without his ankle “giving way” numerous times a day in addition to swelling and pain accompanying any full day’s work. It is obvious that such a worker cannot compete in the common labor market. Jones v. Shreveport Lumber Products Co., 299 So.2d 438 (La.App. 2nd Cir. 1974) ; Carlisle v. Great American Ins. Co., 291 So.2d 449 (La.App. 2nd Cir. 1974) ; Hilbert v. Quinn Construction Co., Inc., 274 So.2d 876 (La. App. 4th Cir. 1973) ; Chapman v. Travelers Ins. Co., 250 So.2d 248 (La.App. 3rd Cir. 1971); Perkins v. Avondale Shipyards, Inc., 245 So.2d 772 (La.App. 4th Cir. 1971); Henbest v. Travelers Ins. Co., 235 So.2d 430 (La.App. 2nd Cir. 1970); Guidry v. Seacost Products, Inc., 220 So.2d 570 (La. App. 3rd Cir. 1969); Andrus v. A. B. C. Rendering Co., 178 So.2d 70 (La.App. 3rd Cir. 1965), writ refused, 248 La. 431, 179 So.2d 273; Thomas v. Gates, Inc., 157 So.2d 263 (La.App. 3rd Cir. 1963).
Quite appropriate to the facts of this case is the foregoing language of this court used in Young v. Southern Casualty Ins. Co., 188 So.2d 437 (La.App. 3rd Cir. 1966):
“Each case must rest upon its own facts. While it would certainly be true that there are any number of specific tasks one could do satisfactorily without using the left arm above shoulder level, it is the view of this Court that plaintiff has nevertheless been substantially handicapped in the general labor market. Regardless of the specific requirements of a* given job, in hiring common labor the primary criterion is the applicant’s ability to do all things; that is what makes it common labor. Any substantial physical handicap, therefore, places the applicant at a distinct disadvantage in the broad labor field. He cannot assume that, with luck, the specific tasks assigned to him will be such as to minimize a physical handicap.”
In conclusion, under all the facts and circumstances we think it would be contrary to the intent of the Workmen’s Compensation Act to find that this 35 year old man, qualified only to do manual labor, would not be substantially handicapped in competing with other able-bodied workers in the flexible common market. As a result we find that plaintiff is totally and permanently disabled within the meaning of the Workmen’s Compensation Act.
No evidence of medical expenses incurred, other than those already paid by the defendant, was presented at trial.
*818 In regard to penalties and attorney’s fees we find, however, that the action of the defendant-insurer in discontinuing compensation payments was based upon Doctor Webre’s advice that the plaintiff was able to return to his former employment. Reliance upon this medical advice was not arbitrary or capricious under the facts of this case.
For the above and foregoing reasons the judgment of the trial court is reversed and set aside and judgment is now rendered in favor of Willie Roosevelt Sanders and against defendants, Boh Brothers Construction Co., Inc. and The Travelers Insurance Co., in solido, for total and permanent disability benefits at the weekly rate of $49.00, during plaintiff’s disability for a period not to exceed 500 weeks, with legal interest on each overdue payment from date due until paid, less a credit for compensation payments previously made. Plaintiff’s demands for penalties, attorney’s fees, and medical expenses are rejected, reserving to him the right to claim such future medical expenses, if and when incurred. Defendants are cast for all costs in the trial court and on appeal.
Reversed and rendered.

. The trial judge found that he could not engage in such activities without anti-fall protection.